1
2
3
4
5
6
7
8
9
10
11
12
13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE, DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - -   :

**SALOOJAS INC,**                              :  **CASE NO:**

    **Plaintiff**                              :  **CLASS ACTION COMPLAINT**

    **vs.**                                        :

                             :

**CIGNA HEALTHCARE OF CALIFORNIA, INC** :

                             :

    **Defendant.**                              :

14

## ORIGINAL CLASS ACTION COMPLAINT

## AND JURY DEMAND

16

    Plaintiff Saloojas, Inc dba AFC Urgent Care of Newark, A California corporation, ("Plaintiff"), brings this Original Complaint  on its behalf of all others similarly situated, by  and  through  counsel, brings this action against Cigna Healthcare of California, Inc (hereinafter referred to as CIGNA). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts and upon the investigation of his  counsel and information and belief as to all other matter.

24
25
26
27
28

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO   1  OF  37

1

## INTRODUCTION

2     1.     This is a class action lawsuit brought against the Defendant Cigna Healthcare

3  of California by Plaintiff on behalf of itself and all and similarly situated individuals

4
      2.     Plaintiff brings this action against the Defendant Cigna because it has
5
6  unjustifiably engaged in unconscionable and fraudulent conduct during the COVID-19

7  public health emergency period in order to evade and circumvent its obligations to

8  fully cover all Cigna Plan members' COVID-19 diagnostic testing ("Covid Testing")

9  services and to reimburse Plaintiff, an out-of-network ("OON") laboratory, for bona

10  fide Covid Testing services offered to these same members in accordance with a

11
   Congressionally set methodology established and supported by the Families First
12
13  Coronavirus Response Act (the "FFCRA"), the Coronavirus Aid, Relief, Economic

14  Security Act (the "CARES Act").

15     3.     Plaintiff brings this action against the Defendant Cigna,  hereinafter

16  referred to as Cigna, because it has unjustifiably engaged in unconscionable and

17  fraudulent conduct during the COVID-19 public health emergency period in order to

18
   evade and circumvent its obligations to fully cover all Cigna Plan members' COVID-
19
20  19 diagnostic testing ("Covid Testing") services and to reimburse Plaintiff, an out-of-

21  network ("OON") laboratory, for bona fide Covid Testing services offered to these

22  same members in accordance with a Congressionally set methodology established and

23  supported by the Families First Coronavirus Response Act (the "FFCRA"), the

24  Coronavirus Aid, Relief, Economic Security Act (the "CARES Act")

25
      4.     The importance of Covid Testing during a worldwide pandemic cannot be
26
27  overlooked as it is the best mitigation mechanism in place to identify and curtail the

28

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO   2  OF   37

spread of the COVID-19 virus. Due to the urgent need to facilitate the nation's response to the public health emergency posed by COVID-19, Congress passed the FFCRA and the CARES Act to, amongst other things, address issues pertaining to the costs of and access to Covid Testing during the COVID-19 pandemic.

5.     Cigna's conduct (or lack thereof as it pertains to the Employer Plans) has undermined national efforts made to mitigate the spread of the COVID-19 virus as it has caused Plaintiff, and other similarly situated OON providers, to shutter specimen collection and testing locations and to potentially stop offering Covid Testing services altogether. Cigna's misprocessing and denials of Covid Testing claims is nearing an insurmountable financial loss for Plaintiff and has caused Plaintiff to hemorrhage its own funds to cover such financial losses.

6.     Cigna has not only mis-adjudicated almost every single Covid Testing claim submitted by Plaintiff on behalf of members of Cigna Plans and Employer Plans administered by Cigna, but has, in fact, denied the vast majority of Covid Testing claims that Plaintiff has submitted, the reasons for which are to be detailed throughout the course of this Original Complaint.

7.     Cigna's fraudulent behavior, in its capacity as an insurer and third-party claims administrator, and its failures to oversee and regulate Cigna's behavior (despite being provided with notice and an opportunity to remedy Cigna's behavior) has had a material adverse effect on the nation's response to the COVID-19 pandemic as it has largely diminished access to testing, shifted financial responsibility for the cost of Covid Testing to the members of Cigna Plans and Employer Plans, and, in the event of any future pandemics requiring the cooperation and the joint efforts of licensed medical facilities and professionals (*e.g.* Plaintiff), providers who have fallen victim to

Cigna's predatory practices will be hesitant and less likely to participate in any such future Federal and/or State efforts. In turn, jeopardizing any future pandemic responses.

8.      Plaintiff has incessantly attempted to contact the Defendant Cigna to inform it of its unlawful practices, has attempted to negotiate an agreed amount/rate to be reimbursed for Covid Testing services with Cigna, and also has provided it notice of its unlawful practices. However, all attempts by Plaintiff to amicably resolve this matter have failed, and Plaintiff is now left with no other option than to file this lawsuit against the Defendant.

9.      By way of this lawsuit, Plaintiff seeks to:

(i)     hold the Defendant Cigna accountable for its fraudulent and unlawful practices, and Employer Plans responsible for their failures to monitor and check Cigna on its practices despite being provided with notice of such misconduct;

(ii)    ensure Plaintiff is properly reimbursed for its efforts to provide a public service in response to the COVID-19 public health emergency; and

(iii)   act as a safeguard against future unlawful practices instituted by Cigna, Employer Plans, and other insurers and health plans in the event of other national public health emergencies.

## NATURE OF THE CLAIMS

10.     The Plaintiff conducts and renders Covid Diagnostic Testing Services Therefore, Plaintiff as a medical facility and provider has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.[3] During the pandemic Plaintiff has operated seven specimen collection sites.

11.      Cigna provides health insurance and/or benefits to members of Cigna Plans pursuant to a variety of health benefit plans and policies of insurance, including employer- sponsored benefit plans and individual health benefit plans.

12.      Under ordinary circumstances, not all health plans insured or administered by Cigna offer its members with access to OON providers and facilities. However, pursuant to Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, all group health plans and health insurance issuers offering group or individual health insurance coverage are required to provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization or other medical management requirements when such items or services are furnished on or after March 18, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.

13.      Furthermore, Section 3202(a) of the CARES Act provides that all group health plans and health insurance issuers covering Covid Testing items and services, as described in Section 6001 of the FFCRA must reimburse OON providers in an amount that equals the cash price for such Covid Testing services as listed by the OON provider on its public internet website or to negotiate a rate/amount to be paid that is less than the publicized cash price.

14.      Cigna has intentionally disregarded its obligations to comply with its requirements to cover Covid Testing services without the imposition of cost-sharing and other medical management requirements pursuant to Section 6001 of the FFCRA and, in the instances Plaintiff is reimbursed for its Covid Testing services, has failed to

reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act. These violations are made to financially benefit Cigna and, by acting in its own self-interests, has also caused the Employer Plans to be in violation of the FFCRA, the CARES Act, Employee Retirement Income Security Act of 1974 ("ERISA"), and applicable State law.

15.     Cigna has set up complex processes and procedures:

(i)     to deny or underpay claims for arbitrary reasons;

(ii)    to force Plaintiff into a paperwork war of attrition in hopes of wearing down Plaintiff to the point of collapse through continuous inundation of Plaintiff's  financial and operational resources

(iii)   that have turned Cigna's internal administrative appeals procedures into kangaroo court where facts and law have no relevance, thus, rendering the administrative appeals process functionally meritless;

(iv)    to disinform its members, the Employer Plans and other self-funded health plans that it administers, Plaintiff and other similarly situated OON providers,  the general public, and Federal and State regulators of its obligations to adjudicate Covid Testing claims in  accordance with the FFCRA and the CARES Act; and

(v)     to ultimately engage in unscrupulous and fraudulent conduct for its own financial benefit during this public health emergency.

16.     Cigna's schemes and misconduct also violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Cigna has engaged in a pattern of racketeering activity that includes, but may not be limited to, the

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  6  OF  37

embezzlement and/or conversion of welfare funds and the repeated and continuous use of mails and wires in the furtherance of multiple schemes to defraud as detailed through this Original Complaint.

## PARTIES

17.    Plaintiff Saloojas, inc dba AFC Urgent Care of Newark is a corporation organized under the laws of the State of California, with its company headquarters located at 1563 Stevenson Blvd, Newark, CA 94560  Plaintiff has lawful standing to bring in all claims asserted herein.

18.    Defendant Cigna  is a California corporation doing business in this district.

## JURISDICTION AND VENUE

19.    This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against Cigna and Employer Plans in Counts I  and II, under the FFCRA, the CARES Act, and ERISA.

20.    This Court also has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against Cigna in Count III, under RICO.

21.    This Court also has supplemental jurisdiction over Plaintiff's state law claims against Cigna, because these claims are so related to Plaintiff's federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

22.    Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action arose in this District.

## CLASS ACTION ALLEGATIONS

23.     This action is brought, and may properly proceed, as a class action, pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a Class defined as follows:

### Nationwide Class:

24.     All persons, businesses and entities who were and are out of network providers of Covid testing services  and covered  by the CARES  and FFRCA ACTs for payment by Cigna of their posted  prices  for rendered Covid Testing  services to the Defendant Cigna's insured

25.     Plaintiff reserves the right to modify, change, or expand  the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

26.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, Plaintiff believes, and on that basis allege, that at least tens of thousands of persons exist who are out of network providers providing Covid testing Services  to  the insured of the Defendant each of whom could file a similar Complaint to this one filed herein.

27.     **Existence/Predominance of Common Questions of Fact  and Law:** Common questions of law and fact exist as to all members of the Class.   These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

(a)     Does the FFRCA and CARES ACT apply to the Defendant Cigna?

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  8  OF  37

(b)    Are the following charges valid COVID Testing fees under the CARES Act?

(i)    the doctor Covid medical visit CPT 99203,

(ii)   the additional urgent care walkin charge CPT CODE S9088,

(iii)  the patient optional Covid swab collection fee CPT CODE G2023 and

(iv)   the patient optional fee for the emergency Covid protective equipment

CPT CODE 99072.

(c)    can the Defendant Cigna  shift the payment for the above (b)(1-iv) service

to their insured as their responsibility?

(d)    if the (b) (1-iv) services are COVID testing services, is it the responsibility of

the Defendant Cigna to pay their posted prices under the CARES ACT?

28.    **Typicality:** Plaintiff's claims are typical of the claims of the Class and Class members were injured in the same manner by Defendant's uniform course of conduct alleged herein.   Plaintiff and all Class members have the same claims against defendant relating  to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for  relief are identical to the giving rise to the claims of all Class Members.

29.    **Adequacy**: Plaintiff is an adequate representative for the Class because its interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff  has retained counsel competent and highly experienced in complex litigation and  they  intend  to  prosecute  this  action  vigorously.   The  interests  of  the Class will be fairly and adequately protected by Plaintiff and his counsel.

30.    **Superiority**: A class action is superior to all other available means of fair and  efficient adjudication of the claims of Plaintiff and members of the Class. The

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  9  OF  37

injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified.

31     Defendant has acted, and refuses to act, on grounds generally applicable to the Class, hereby making appropriate final equitable and injunctive relief with respect to the Class as as a whole.

## BACKGROUND AS TO THE FFCRA AND THE CARES ACT

32.     Pursuant to Section 319 of the Public Health Service Act, on January 31, 2020, the Secretary of Health and Human Services ("HHS") issued a determination that a Public Health Emergency exists and has existed as of January 27, 2020, due to confirmed cases of COVID-19 being identified in this country.

33.     On March 13, 2020, the President issued Proclamation 9994 declaring a National Emergency concerning the COVID-19 outbreak with a determination that a national emergency exists nationwide, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

TITLE OF DOCUMENT: CLASS ACTION COMPLAINT
PAGE NO 10 OF 37

34.     To facilitate the nation's response to the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act to, amongst other things, require group health plans and health insurance issuers offering group or individual health insurance coverage to:

(i)     provide benefits for certain items and services related to diagnostic testing for the  detection or diagnosis of COVID- 19 without the imposition of any  cost-sharing  requirements (*i.e.*  deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements; and

(ii)     to reimburse any provider for COVID-19 diagnostic testing an amount that  equals the negotiated rate or, if the plan or issuer does not have a negotiated  rate with the  provider (*e.g.* Plaintiff), the cash price for such service that is listed by the provider on  its public website in  accordance with 45 CFR § 182.40.

35.   To further clarify to issuers and health plans their legal expectations when processing a claim for Covid Testing in accordance with the FFCRA and the CARES Act, the Department of Labor ("DOL"), the Department of Health and Human Services ("HHS"), and the Department of the Treasury (the "Treasury") (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs") to address any stakeholder questions or concerns pertaining to the proper adjudication of Covid Testing claims. **The following FAQs summarize the health plan and issuers' obligations as it pertains to covering and paying for Covid Testing services during the public health emergency:**

**The Departments FAQ, Part 42, Q1**: *Which types of group health plans and health insurance coverage are subject to section 6001 of the FFCRA, as amended by section 3201 of the CARES Act?*

Section 6001 of the FFCRA, as amended by section 3201 of **the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage** (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.

"Individual health insurance coverage" includes coverage offered in the individual market through or outside of an Exchange, as well as student health insurance coverage (as defined in 45 CFR 147.145).[1]

**The Departments FAQ, Part 42, Q3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*

Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, requires plans and issuers to provide coverage for the following items and services:

(1) An in vitro diagnostic test as defined in section 809.3 of the title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the diagnosis of COVID-19, and the administration of such a test, that - ...

B. The developer has requested, or intends to request, emergency use authorization under section564 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable time frame; ...[2]

---

[1] *See* https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf.
[2] *Id.*

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  12  OF  37

**The Departments FAQ, Part 42, Q6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization requirements, or other medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

<u>No</u>. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, co-payments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services. **These items and services must be covered without cost sharing when medically appropriate for the individual, as determined by the individual's attending healthcare provider in accordance with accepted standards of current medical practice.**[3]

**The Departments FAQ, Part 42, Q7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

<u>Yes</u>. Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: ...

   2. <u>If the plan or issuer does not have a negotiated rater with such provider, the plan or issuer</u> shall reimburse the provider in an amount that <u>equals the cash price for such service as listed by</u> the provider on a public <u>internet website, or the plan or issuer may negotiate a rate with the provider</u> for less than such cash price...[4]

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. **Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website.** In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[5]

---

[3] *Id.*
[4] *Id.*
[5] *See* https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf; *See also* FAQ Part 43

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  13  OF  _37_

Q12: ... Because the Departments interpret the provisions of section 3202 of the CARES Act as specifying a rate that generally protects participants, beneficiaries, and enrollees from balance billing for a COVID-19 test (see Q9 above), the requirement to pay the greatest of three amounts under the regulations implementing section 2719A of the PHS Act is superseded by the requirements of section 3202(a) of the CARES Act with regard to COVID-19 diagnostic tests that are out-of- network emergency services. For these services, the plan or issuer must reimburse an out-of-network provider of COVID-19 testing an amount that equals the cash price for such service that is listed by the provider on a public website, or the plan or issuer may negotiate a rate that is lower than the cash price.

**The Departments FAQ, Part 44, Q1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

**No. The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic** testing. Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered without cost sharing, prior authorization, or other medical management requirements.

**The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drive through" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."

**The Departments FAQ, Part 44, Q5**: *What items and services are plans and issuers required to cover associated with COVID-19 diagnostic testing? What steps should plans and issuers take to help ensure compliance with these requirements?*

... Plans and issuers should maintain their claims processing and other information technology systems in ways that protect participants, beneficiaries, and enrollees from inappropriate cost sharing and should document any steps that they are taking to do so...[8]

[6]*See* https://www.cms.gov/files/document/faqs-part-44.pdf.
[7] *Id.*
[8] *Id.*

36. To supplement the FAQs publicized by the Departments, the Internal Revenue Service (the "IRS") issued Notice 2020-15 pertaining to high deductible health plans ("HDHPs") and expenses related to COVID-19 to provide members of HDHPs (including those HDHPs insured or administered by Cigna) the confidence that Covid Testing will be covered, in full, by their HDHP. Notice 2020-15 states as follows:

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The CARES ACT

37. Congress in early 2020 when the COVID pandemic was just starting wanted to be sure that all Americans had access to COVID Testing Services. Congress passed the federal Cares Act Covid testing provisions, which are set forth below:

SEC. 6001. COVERAGE OF TESTING FOR COVID–19.

(a)    IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or otherr medical management requirements, for the following items and services furnished during any portion of the emergency period beginning on or after the date of the enactment of this Act:

(1)    In vitro diagnostic products. . . for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized and the administration of such in vitro diagnostic products.
(emphasis added)

[d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19 [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  15  OF  37

> section 223(c)(2)(A) will not fail to be an HDHP
> merely because the health plan provides medical
> care services and items purchased related to testing
> for and treatment of COVID-19 prior to the
> satisfaction of the applicable minimum deductible.

38.   The CARES Act then states:

SEC. 3202. PRICING OF DIAGNOSTIC TESTING.

(a)   REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee **shall reimburse the provider** of the diagnostic testing **as follows**:

    (1)   If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

    (2)   If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer **shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website,** or such plan or issuer may negotiate a rate with such provider for less than such cash price.

(b)   REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID–19.—

(1)   IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public   the cash price for such test on a public internet website of such provider.

39.   Since the passage of the CARES ACT , 971,162 have died of Covid in the United States almost 1 out of every 350 people have died because of Covid, 86,794

have died in California of Covid and 2,243 have died of Covid in Alameda county alone.

### a. The Improper Record Request Scheme and the Imposition of Prohibited Medical Management Requirements

40. As explained above, Section 6001 of the FFCRA expressly prohibits the imposition of medical management requirements as a condition of coverage and reimbursement for Covid Testing services regardless of whether the testing provider is in-network or OON.

41. However, despite this prohibition, Cigna implemented an unlawful scheme that consists of improper, irrelevant, and burdensome medical record requests to Plaintiff for the sole purpose of denying as many claims for bona fide Covid Testing services submitted by Plaintiff as possible (the "Improper Record Request Scheme").

42. Regardless of the fact that Plaintiff is an urgent care facility and holds all proper emergency use authorizations and approvals necessary, Cigna deployed its Improper Record Request Scheme against Plaintiff with the intended purpose of placing barriers and denying Covid Testing claims for its own financial benefit

### i. Cigna's Arbitrary and Inconsistent Review of Requested Records

43. Because Plaintiff only provides Covid Testing services Plaintiff is in the unique position that all claims being electronically submitted to Cigna via the HCFA-1500 forms are uniformly constructed and submitted. Given the uniformity of the Covid Testing services and the electronic claims being submitted to Cigna coupled with the Federal and State mandates that require Cigna to process Covid Testing claims submitted by OON providers in a very singular fashion, Plaintiff's very reasonable expectation was that all Covid Testing claims should be paid at Plaintiff's cash price

since Cigna, to date, has not even attempted to negotiate an amount to be paid despite Plaintiff's good faith attempts to do so.

44.     Leaving aside the unlawful and burdensome nature of Cigna's Improper Record Request Scheme, Plaintiff also assumed that compliance with Cigna's claim-by-claim record requests would lead to a consistent review and adjudication of Plaintiff's Covid Testing claims **since all Covid Testing claims and requested records submitted to Cigna are the same or substantially similar.** That is far from the case.

45.     For rendered Covid service claims, the Defendant Cigna in the past has paid a portion of the full posted Covid testing prices of the Plaintiff:

   a.     for the doctor COVID medical visit CPT 99203,

   b.     the additional urgent care walkin charge CPT CODE S9088,

   c.     the patient optional Covid swab collection fee CPT COD G2023 and

   d.     the patient optional fee for the emergency COVID protective equipment CPT CODE 99072.

46.     Once it became obvious to Defendant that there would more than just a few such charges coming in the future the Defendant ceased paying for the full Covid posted prices for the same Covid testing services and instead shifted the payment responsibility to its insureds even though doing so violated the CARES Act.

## REDUCTIONS FOR CO-PAYS OR DEDUCTIBLES ASSESSED TO THE INSURED IS A SEPARATE VIOLATION OF THE CARES ACT SECTION 3203

47.     Below are four samples of the thousands of Explanation of Benefits provided by the defendant Cigna which states on their face that the payment for the COVID Testing bill submitted by Saloojas has been reduced by co-pays or deductibles assessed

TITLE OF DOCUMENT: CLASS ACTION COMPLAINT
PAGE NO  18  OF  37

against their insured. That is specially not allowed under the CARES ACT when the services are for COVID TESTING.

48.     Under the CARES Act Sec 3203, there is no cost sharing permitted for COVID testing between the insured and the insurer. This means that the insured cannot be assessed a co-pay or deductible for the COVID Testing. There has been instances where the payment to Saloojas contains deductions for the insured's co-pays and deductibles for the COVID Testing. The CARES ACT specifically makes it illegal to reduce the payments for services rendered to COVID Testing for any co-pays on deductibles assessed to the insured. The insurer is required by law to to pay the full amount without any adjustment for COVID Testing services.

49.     **SEC. 3203. RAPID COVERAGE OF PREVENTIVE SERVICES AND VACCINES FOR CORONAVIRUS.**

**(a) IN GENERAL.**—Notwithstanding 2713(b) of the Public Health Service Act (42 U.S.C. 300gg–13), the Secretary of Health and Human Services, the **Secretary of Labor, and the Secretary of the Treasury shall require group health plans and health insurance issuers offering group or individual health insurance to cover** *(without cost-sharing)* **any qualifying coronavirus preventive service, pursuant to section 2713(a) of the Public Health Service Act** (42 U.S.C. 300gg–13(a)) (including the regulations under sections 2590.715–2713 of title 29, Code of Federal Regulations, section 54.9815–2713 of title 26, Code of Federal Regulations, and section 147.130 of title 45, Code of Federal Regulations (or any successor regulations)). The requirement described in this subsection shall take effect with respect to a qualifying coronavirus preventive service on the specified date described in subsection (b)(2).

*Provider Explanation of Medical Payment Report*

⊹ Cigna.

| Provider Number | Provider Name | | | | | | | Date through which claims were processed | | | | THIS IS NOT A BILL. Retain for Your Records | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 823826671 | 0002 | SALOMAS INC | | | | | | 02/19/2021 | | | | | | Page 1 |

| Line | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Procedure Amount | Allowed Amount | Not Covered/Discount Amount | Deduct/Copay/Amount | Coinsurance Amount | Operation Location/Group | DRG/Rev Bills/APC Type | DMG/Par Chris/APC Number | DRG/Par Bills Benefit Amount | Paid to Member/Benefit Amount | Plan Benefit | See Note |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to: eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME:
PATIENT'S RELATION.... TO SUBSCRIBER:        SUBSCRIBER
SUBSCRIBER NAME:

PATIENT:        PATIENT'S        OPERATION LOCATION/GROUP#,53372-9-3556467 RECEIVE DATE: 02/01/2021 PROCESS DATE: 02/19
PROVIDER NETWORK STATUS:        OUT OF NETWORK
SUBSCRIBER#:        U7444641        REF#:   96821525261&4        CHECK#: 0823914554646

| | | | | | | | | | | | | | | |
| 1 | 11282020 | 9928o | | 383.00 | | 265.22 | | | | | 0.00 | 0.00 | 137.78 | A0 |
| 2 | 11282020 | S3988 | | 366.00 | 137.78 | 366.00 | | | | | 0.00 | 0.00 | 0.00 | A1 |
| 3 | 11282020 | 99051 | | 168.00 | | 168.00 | | | | | 0.00 | 0.00 | 0.00 | A2 |
| 4 | 11282020 | G2023 | | 90.00 | | 90.00 | | | | | 0.00 | 0.00 | 0.00 | A3 |
| 5 | 11282020 | 99972 | | 85.00 | | 85.00 | | | | | 0.00 | 0.00 | 0.00 | A4 |
| | TOTAL. | | | 1090.00 | 137.78 | 952.22 | | | | | 0.00 | 0.00 | 137.78 | |

PAYMENT OF        $137.78 TO PARMJIT M SINGH MD
                                BALANCE............        00.00        FEE 009

\$0.00 HAS BEEN APPLIED TOWARDS THE 94.000 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2020
\$0.00 HAS BEEN APPLIED TOWARDS THE \$12,500 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
\$651.99 HAS BEEN APPLIED TOWARDS THE \$2,000 IN NETWORK FAMILY DEDUCTIBLE FOR 2020
\$997.98 HAS BEEN APPLIED TOWARDS THE \$4,550 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
\$746.48 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

A0) HEALTH CARE PROFESSIONAL: PATIENT IS NOT LIABLE
    FOR THIS ADDITIONAL AMOUNT IF YOU ACCEPT THE
    ESTABLISHED REIMBURSEMENT SCHEDULE ALLOWANCE.
    BILLING THE PATIENT MORE THAN THE AMOUNT
    SHOWN AS PATIENT LIABILITY, CUSTOMER: CALL
    CIGNA IF BILLED MORE THAN THE "WHAT I OWE"
    AMOUNT.

A1) THE SUBMITTED PROCEDURE IS DISALLOWED BECAUSE IT
    IS INCIDENTAL TO A CODE BILLED ON THE SAME DATE OF
    SERVICE.

A2) THE SUBMITTED PROCEDURE IS DISALLOWED BECAUSE IT
    IS MUTUALLY EXCLUSIVE TO A CODE BILLED ON THE SAME
    DATE OF SERVICE.

A3) HEALTH CARE PROFESSIONAL: THE SUBMITTED PROCEDURE CODE
    IS DISALLOWED BECAUSE REIMBURSEMENT IS INCLUDED IN THE
    PRIMARY SERVICE.

A4) ACCORDING TO CMS, THIS PROCEDURE IS ALWAYS BUNDLED
    WHEN BILLED WITH ANY OTHER PROCEDURE, SO THE SUBMITTED
    CODE IS DISALLOWED.

VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION
ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
(WWW.CIGNAFORHCP.COM)

G248SE  04-06-2016

Proclaim Provider EOP Summary

page 20 of 37

# Provider Explanation of Medical Payment Report

**Cigna.**

| Provider Number | Provider Name | | Date through which claims were processed 02/15/2021 | THIS IS NOT A BILL Retain For Your Records | Page 1 |
|---|---|---|---|---|---|
| 823826471 0002 | SALCOJAS INC | | | | |

| Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Amount | Allowed Amount | Not Covered/ Discount | Deduct/Cover/ Amount | Coinsurance Amount | DRG/ Method/ APCType | DRG/ Fee Date/ APCNumber | DRG/Fee Date Amount | DRG/ Fee Date/ Benefit Amount | Plan Benefit | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

PATIENT NAME:
PATIENT'S RELATI\_\_\_\_ TO SUBSCRIBER: SUBSCRIBER
SUBSCRIBER NAME:

PATIENT: ☐ PATIENT: ☐
PROVIDER NETWORK STATUS: SUBSCRIBER#: U696715A2 OUT OF NETWORK REF#: 4682762617157
OPERATION LOCATION/GROUP# 39601-9-3359S57 RECEIVE DATE: 01/26/2021 PROCESS DATE: 02/15

CHECK#: 0017285157%

| # | 1 | 11242020 | 99203 | 343.00 | | | | | | | | 0.00 | 0.00 | 174.37 | A9 |
| | 2 | 11242020 | 89088 | 364.00 | 174.37 | | 364.00 | | | | | 0.00 | 0.00 | 0.00 | A1 |
| | 3 | 11242020 | G2023 | 90.00 | | | 90.00 | | | | | 0.00 | 0.00 | 0.00 | A2 |
| | 4 | 11242020 | 99072 | 85.00 | | | 85.00 | | | | | 0.00 | 0.00 | 0.00 | A3 |
| | | TOTAL | | 922.00 | 174.37 | | 747.63 | | | | | 0.00 | 0.00 | 174.37 | |

$1,661.09 HAS BEEN APPLIED TOWARDS THE $1,750 IN NETWORK FAMILY/DEDUCTIBLE FOR 2020
$1,982.27 HAS BEEN APPLIED TOWARDS THE $3,500 IN NETWORK FAMILY/OUT-OF-POCKET LIMIT/ FOR 2020
$3,429.26 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

PAYMENT OF ........... $174.57 TO PARMJIT M SINGH MD
BALANCE........... $0.00
PRE HB1

A0) HEALTH CARE PROFESSIONAL: PATIENT IS NOT LIABLE IF YOU
ACCEPT THE ALLOWABLE AMOUNT. CONTACT DATA ISIGHT AT
877.469.5984 BEFORE BILLING THE PATIENT.

A1) THE SUBMITTED PROCEDURE IS DISALLOWED BECAUSE IT
IS INCIDENTAL TO A CODE BILLED ON THE SAME DATE OF
SERVICE.

A2) HEALTH CARE PROFESSIONAL: THE SUBMITTED PROCEDURE CODE
IS DISALLOWED BECAUSE REIMBURSEMENT IS INCLUDED IN THE
PRIMARY SERVICE.

A3) ACCORDING TO CMS, THIS PROCEDURE IS ALWAYS BUNDLED
WHEN BILLED WITH ANY OTHER PROCEDURE, SO THE SUBMITTED
CODE IS DISALLOWED.

A9) HEALTH CARE PROFESSIONAL: PATIENT IS NOT LIABLE IF YOU
ACCEPT THE ALLOWABLE AMOUNT. CONTACT DATA ISIGHT AT
(WWW.CIGNAFORHCP.COM)

ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any
particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not
limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

02418E 04-06-2015

page 21 OF 37

**Provider Explanation of Medical Payment Report**

Cigna.

Provider Number
82382665371 0000002

Provider Name
SALOOJAS INC

Date through which claims where processed
March 2, 2021

810580024621D

THIS IS NOT A BILL
Retain for your Records

Page
1

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME: /
PATIENT #:
OPERATION LOCATION/GROUP#: 24638-9-3107016 RECEIVE DATE: 02/27/2021

PATIENT'S RELATIONSHIP TO SUBSCRIBER: DEPENDENT
SUBSCRIBER NAME:
PROCESS DATE: 03/02
PROVIDER NETWORK STATUS: OUT OF NETWORK
SUBSCRIBER#: U32693811
REF#: 9652104810008

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 12292020 | 99203 | 383.00 | | | | 00000 | 0 | 0 137.78 | A0 |
| 2 12242020 | 89088 | 364.00 | 137.78 | $245.22 | | 00000 | 0 | 0 .00 | A1 |
| 3 12292020 | G2023 | 90.00 | | $364.00 | | 00000 | 0 | 0 .00 | A2 |
| 4 12292020 | 99072 | 85.00 | | $90.00 | | 00000 | 0 | 0 .00 | A3 |
| Total | | 922.00 | $137.78 | $85.00 | | | | | |

$1,200.00 HAS BEEN APPLIED TOWARDS THE $2,400 OUT OF NETWORK INDIVIDUAL DEDUCTIBLE FOR 2020
$2,400.00 HAS BEEN APPLIED TOWARDS THE $4,800 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2020
THE $1,200 IN NETWORK INDIVIDUAL DEDUCTIBLE HAS BEEN SATISFIED FOR 2020
THE $2,400 IN NETWORK FAMILY DEDUCTIBLE HAS BEEN SATISFIED FOR 2020
$2,939.44 HAS BEEN APPLIED TOWARDS THE $7,500 OUT OF NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2020
$6,689.44 HAS BEEN APPLIED TOWARDS THE $15,000 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
$2,939.44 HAS BEEN APPLIED TOWARDS THE $3,750 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2020
$6,689.44 HAS BEEN APPLIED TOWARDS THE $7,500 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
$94,291.84 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

BALANCE.............    $0.00

PAYMENT OF    $137.78 TO PARMJIT M SINGH MD

PRE HB6

VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION
ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
WWW.CIGNAFORHCP.COM).

G2436E 04-08-2015

D186.16

Page 22 of 37

Provider Explanation of Medical Payment Report

‡ Cigna.

| Provider Number | Provider Name | | | | | | | | Date through which claims were processed | | THIS IS NOT A BILL | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 823826671   0002 | SALOUAS INC | | | | | | | | 02/10/2021 | | Retain for Your Records | 1 |

| Line | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Amount | Procedure Code Amount | Allowed Amount | Not Covered Discount | Delay/Copay Amount | Coinsurance Amount | DRG/ Per Diem/ APC/Type | DRG/ Per Diem/ APC Number | DRG/ Per Diem/ Per Diem/ Member's | DRG/ Per Diem/ Report Amount | Plan Benefit | See Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

PATIENT NAME:_____   PATIENT#:                       OPERATION LOCATION/GROUP# 51659→→3356941 RECEIVE DATE: 01/19/2021 PROCESS DATE: 02/18
PATIENT'S RELATIONS'_____ TO SUBSCRIBER:   PROVIDER NETWORK STATUS: OUT OF NETWORK   REF#: 866721SCP09110B
SUBSCRIBER NAME:            DEPENDENT              SUBSCRIBER#: U753L83966                                     CHECK#: 0859055B643

| 1 | 11212020 | 99203 | | 385.00 | | | 245.22 | | | | 0.00 | 0.00 | 0.00 | 137.78 | 137.78 | A0 |
| 2 | 11212020 | S9088 | | 366.00 | 137.78 | | 366.00 | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | A1 |
| 3 | 11212020 | 99051 | | 160.00 | | | 360.00 | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | A1 |
| 4 | 11212020 | G2023 | | 90.00 | | | 160.00 | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | A2 |
| 5 | 11212020 | 99072 | | 85.00 | | | 90.00 | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | A3 |
| | | | | | | | 85.00 | | | | | | | | | |
| | TOTAL | | | 1096.00 | | | 137.78 | | 952.22 | | 0.00 | 0.00 | 0.00 | 137.78 | 137.78 | A4 |

THE $1,000 OUT OF NETWORK INDIVIDUAL DEDUCTIBLE HAS BEEN SATISFIED FOR 2020
$2,000.00 HAS BEEN APPLIED TOWARDS THE $3,000 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2020
THE $5,000 IN NETWORK INDIVIDUAL DEDUCTIBLE HAS BEEN SATISFIED FOR 2020
THE $1,500 IN NETWORK FAMILY DEDUCTIBLE HAS BEEN SATISFIED FOR 2020
$2,763.25 HAS BEEN APPLIED TOWARDS THE $3,000 OUT OF NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT'
FOR 2020
$5,900.00 HAS BEEN APPLIED TOWARDS THE $9,000 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR
2020
THE $2,500 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' HAS BEEN REACHED FOR 2020
THE $5,000 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' HAS BEEN REACHED FOR 2020
$6,929.64 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

PAYMENT OF            $137.78 TO PARKLIT M SINGH MD
                                    BALANCE.............                      $0.00
                                                                     PRE NBP
VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION
ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
(WWW.CIGNAFORHCP.COM).
YOU MAY REQUEST A REVIEW BY THE CALIFORNIA DEPARTMENT OF INSURANCE.
CALIFORNIA DEPARTMENT OF INSURANCE
CONSUMER COMMUNICATIONS BUREAU
300 SOUTH SPRING STREET, SOUTH TOWER
LOS ANGELES, CA 90013
TDD NUMBER: 1-800-482-4TDD (48333)
1-800-927-HELP (4357) OR 213-897-8921
HTTP://WWW.INSURANCE.CA.GOV/01-CONSUMERS/101-HELP/
CIGNA HEALTH AND LIFE INSURANCE COMPANY HEALTHCARE PROFESSIONAL (PROVIDER)
DISPUTE RESOLUTION POLICY.
IF YOU ARE NOT SATISFIED WITH THIS DECISION, YOU HAVE THE RIGHT TO SUBMIT A
PROVIDER DISPUTE. REQUESTS MUST BE SUBMITTED WITHIN ONE YEAR FROM THE DATE
OF THIS EOP. DISPUTES MUST BE SUBMITTED IN WRITING, AND MAILED TO:
CIGNA NATIONAL APPEALS UNIT - CA PPO
PO BOX 188011

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any
particular rate or amount. The patient's summary plan description governs amount payable, at every claim submitted is subject to all plan provisions, including, but not
limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

Proclaim Provider EOP Summary

G2450E  04-08-2015

50.     The CARES ACT was implemented so as to apply only to COVID Testing services. That may be where the problem occurred at your end. While it would be totally proper to reduce by co-pays and deductibles for non COVID Testing and treatment the amount that should be paid by the insured from a bill to an out of network provider, for COVID TESTING along such reductions are not allowed. All such reductions assessed against the COVID Testing bills submitted by Saloojas are simply wrong, illegal and must be corrected. There is no patient responsibility for the Covid testing bills under the CARES ACT and it is illegal to charge such co-pays and deductibles. The net effect being to force people not to get treatment because of the fear of being charged, or being sued to collect the improper charge or the provider not being paid even though he is required to have been fully paid under the CARES Act.

## CAUSES OF ACTION

### CLAIM I

### VIOLATION OF THE FFCRA AND THE CARES ACT

51.  The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

52.     Defendant Cigna offers group health plans and/or is a health insurance issuer offering group or individual health insurance coverage, as those terms are defined under Section 6001 of the FFCRA.

53.     When COVID first appeared most of the Urgent Cares throughout Northern California closed or would not do COVID testing. The Plainitff was the only one within a 35 miles radius which continued to do COVID testing. As of March 15, 2022, a total of 31,772 Covid examiantions were rendered by Plaintiff alone which either have not been

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  24  OF  37

paid or were underpaid by insurance companies in violation of the CARES Act. The Defendant CIGNA alone has not paid or udnerpaid in thousands of cases.

54.     The COVID Testing services that Plaintiff provided to members of the CIGNA Plans and the Employer Plans administered by Cigna constitute in vitro diagnostic products for the detection of of COVID-19 as provided by Sec 6001 of the FFCRA.

55.     Plaintiff is an OON medical and urgent care facility and did not have a negotiated rate with Cigna for the provision of Covid Testing services.

56.     In compliance with the CARES Act, Plaintiff posted its cash prices for Covid Testing Services on its public website.

57.     Under section 3202(a)(2) of the CARES Act, if a health plan does not have a negotiated rate with a provider, such as Plaintiff, for providing Covid Testing services, the health plan is obligated to pay the provider his posted cash price for those services.

58.     Cigna, despite numerous and persistent demands and requests, have failed and refused to provide anything remotely close to Plaintiff's cash price for providing Covid Testing services. In fact, Cigna has paid nothing for the vast majority of Covid Testing claims Plaintiff has submitted to Cigna.

59.   By reason of the foregoing, Plaintiff has been injured.

60.     Based on the above, Plaintiff is entitled to judgment against Cigna and the Employer Plans in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees

## CLAIM II
## VIOLATION OF SECTION 502(a)(1)(B) OF ERISA

61.  The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

62.  All of the Employer Plans at issue are benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[9]

63.  ERISA, the FFCRA and the CARES Act require the Employer Plans and Cigna to reimburse OON providers for Covid Testing Services in a specific manner.

64.  Cigna's denials and mis-adjudication of Covid Testing claims submitted by Plaintiff on behalf of members of self-funded health plans administered by Cigna (e.g. Employer Plans) are a violation of the requirements of self-funded ERISA health plans to cover Covid Testing services and a wrongful denial of benefits owed under ERISA.

65.  Many of the members of plans either insured or administered by Cigna who received Covid Testing services from Plaintiff executed assignment of benefits documents.

66.  Moreover, the FFCRA and the CARES Act, by directing all plans, including self-funded ERISA health plans (e.g. Employer Plans), not just to cover Covid Testing and related services, but to pay OON providers certain amounts for Covid Testing services provided to covered members, have obviated the need for a provider to obtain a specific assignment of ERISA benefits from a member of a health plan subject to ERISA to be entitled to seek reimbursement from the health plan for Covid Testing services, or to be entitled to bring an action under ERISA for reimbursement and/or injunctive relief.

67.  In effect, the FFCRA and the CARES Act have given OON providers of Covid

_____
[9] 9 U.S.C. §§ 1001, et seq.

Testing services standing to sue self-funded health plans subject to ERISA (*e.g.* Employer Plans) for violations of ERISA, including violations of the FFCRA and the CARES Act, regardless of whether there has been an assignment of benefits. Indeed, the "benefit" Plaintiff is suing for is the provider reimbursement required by the FFCRA and the CARES Act. The FFCRA and the CARES Act do not merely require healthcare plans to "cover" Covid Testing services, they require self- funded health plans to pay amounts directly to OON providers, because the Congressional intent was to prevent patients from facing any possible out of pocket liability.

68.   Pursuant to 29 C.F.R. § 2560.503-1(l) and 45 C.F.R. §§ 147.136(b)(2)(ii (F)(1), (b)(3)(ii)(F)(1), Cigna' internal claims and appeals processes (*i.e.* claims procedures) failed to comply with or strictly adhere to the minimum requirements of the internal claims and appeals processes, as prescribed by 29 C.F.R. § 2560.503-1 and/or 45 C.F.R. § 147.136; therefore, the internal claims and appeals processes available under each Cigna Plan and Employer Plan are deemed to have been exhausted allowing Plaintiff to pursue any available remedies under Section 502(a) of ERISA, or under State law on the basis that Cigna have failed to provide a reasonable claims procedure that would yield a decision on the merits of the Covid Testing claims at issue.

69.   Additionally, pursuant to 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(2), (b)(3)(ii)(F)(2), Cigna, in its capacity as an insurer and third-party claims administrator, failed to respond to Plaintiff's written request for a written explanation of Cigna' patterns and practices of violations as alleged and detailed in this Original Complaint within ten (10) days of Plaintiff's specific written request to Cigna; therefore, the internal claims and appeals processes available under each Cigna Plan and Employer Plan are further deemed to have been exhausted.

70.     Thus, Plaintiff has exhausted available administrative remedies, or exhaustion of administrative remedies would be futile given the above, and, alternatively, Cigna's utter disregard for ERISA deadlines and procedures described above excuses any failure to exhaust administrative remedies.

71.     29 U.S.C. § 1132 provides that a member of a self-funded health plan subject to ERISA and Plaintiff under these circumstances may bring a civil action to recover benefits due under the plan, to enforce rights under the plan and to clarify rights and future benefits under the plan.

72.     Cigna' failures to pay Plaintiff in full for covered Covid Testing services rendered to the members constitutes a breach of these self-funded health plans, and Cigna' failures were erroneous, arbitrary and capricious and were without reason, were unsupported by substantial evidence, and were erroneous as a matter of law.

73.     Plaintiff is entitled to payment, pursuant to the FFCRA and the CARES Act for the bona fide Covid Testing services provided to Cigna members.

74.     Furthermore, the Court may equitably reform the Employer Plans that do not comply with ERISA, the FFCRA, and the CARES Act, to render them compliant. Fairness and justice require such equitable reformation, because the Plaintiff provided an invaluable service to the community, in reliance on federal law regarding reimbursement, and Cigna is violating that law, to its own benefit and the detriment of the Plaintiff and members of plans Cigna insures and administers. The Court should equitably reform any of Cigna's ERISA plans that do not comply with the FFCRA and the CARES Act at issue to require that they mirror the language of the FFCRA and the CARES Act.

75.     Plaintiff is also entitled to reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132 (g)(1).

## CLAIM III
## VIOLATION OF 18 U.S.C. § 1962©
## (RICO)

76.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

77.    Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3)

78.    Each of the health plans that Cigna administers is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Employer Plans and self-funded health plans that Cigna administers were engaged in activities affecting interstate and foreign commerce at all times relevant to this Original Complaint.

79.    Cigna is associated with the plans that it administers and has conducted or participated, directly or indirectly, in the conduct of the Employer Plans and self-funded health plans that Cigna administers in relation to Plaintiff through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

80.    The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully throughout this Original Complaint, includes Cigna's multiple, repeated, and continuous use of the mails and wires in furtherance of the Improper Record Request Scheme, meritless claims and appeals processes, its disinformation campaign in violation of 18 U.S.C. §§ 1341 and 1343, and embezzlement and/or conversion of self-funded plans assets through its CRS Benchmark Program in violation 18 U.S.C. § 664. Cigna's violations have occurred in relation to, and/or involve benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with this COVID-

19 Public Health Emergency which is a presidentially declared "emergency" as this term is defined in Section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

81.   Specific and detailed explanations and examples of Cigna's use of the mails and wires to engage in a pattern of racketeering activity and embezzlement, theft, and conversion of self-funded health plan assets are detailed throughout this Original Complaint.

82.   As a direct result of Cigna's violation of 18 U.S.C. § 1962(c), Plaintiff has suffered substantial injury to its business and property within the meaning of 18 U.S.C. § 1964(c).

## CLAIM IV

## PROMISSORY ESTOPPEL (NON-ERISA)

83.   The foregoing allegations are re-alleged and incorporated by reference as  if fully set forth herein.

84.   Cigna undertook conduct that conveyed to Plaintiff that coverage for COVID testing would be afforded to its members, but then arbitrarily adjudicated claims and refused to issue proper reimbursements when the claims were submitted on behalf of the members of health plans insured or administered by Cigna.

85.   Cigna expected, or reasonably should have expected, that Plaintiff would rely on Cigna's compliance with the FFCRA and the CARES Act, especially given its public statements and publications emphasizing its compliance with the aforementioned laws.

86.   Plaintiff detrimentally relied on Cigna's promises to pay by continuing to provide Covid Testing services to Cigna members. Plaintiff's reliance on the promises

caused it to suffer a definite and substantial detriment and has caused it damage.

87.     Based on the above, Plaintiff is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

88.     Instead, as detailed throughout this Original Complaint, Cigna engaged in unscrupulous and fraudulent conduct to avoid its obligation to reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act. This unlawful conduct does not excuse Cigna from delaying payments and/or perpetually paying the improper amount on Covid Testing claims.

89.     Cigna's failures to timely pay the full amounts due to Plaintiff of its Covid Testing claims has resulted in overdue payment due to Plaintiff

90.     By reason of the foregoing, Plaintiff is entitled to recover from Cigna the full underpaid and unpaid amounts due to Plaintiff on all relevant Covid Testing claims, together with any and all applicable statutory interests

## CLAIM V
## INJUNCTIVE RELIEF (NON-ERISA)

91.   The foregoing allegations are re-alleged and incorporated by reference as is fully set forth herein.

92.   Currently, Cigna is wrongfully denying payment in whole or in part for virtually all bona fide Covid Testing service claims submitted during this COVID-19 public health emergency by Plaintiff on behalf of members of health plans either insured or administered by Cigna. In doing so, Cigna has failed and is failing to comply with the FFCRA, the CARES Act, ERISA, the terms of the health plans, and other applicable Federal and State laws.

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  31  OF   37

93.   Furthermore, as detailed throughout the course of this Original Complaint, Cigna has engaged in unscrupulous and fraudulent conduct to circumvent its obligations to adjudicate and reimburse Plaintiff for bona fide Covid Testing services.

94.   Unless enjoined from doing so, Cigna will continue to operate its fraudulent schemes and meritless claims and appeals processes and fail to comply with all applicable authorities to detriment of Plaintiff, members of health plans insured or administered by Cigna, and the self-funded health plans that Cigna administers. A monetary judgment in this case will only compensate Plaintiff for past losses and will not stop Cigna from continuing to engage in unscrupulous and fraudulent conduct and to embezzlement and/or convert the assets of self-funded health plans, which is necessary for Plaintiff to maintain its laboratory. Plaintiff has not practical or adequate remedy, either administratively or at law, to avoid these future losses.

95.   Plaintiff is entitled to a permanent injunction requiring Cigna to comply with the requirements of the FFCRA and the CARES for Covid Testing claims submitted on behalf of members of plans that are insured by Cigna, and removing Cigna as claims administrator to the self-funded health plans Cigna administers so that Cigna cannot continue to summarily deny bona fide Covid Testing claims provided by Plaintiff.

## CLAIM VI

## UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS ACTS

## AND PRACTICES

96.   Plaintiff hereby incorporate each and every foregoing allegation as if fully alleged herein and further alleges as follows.

97.   The Defendant Cigna's acts and practices as detailed above constitute acts of

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  32  OF  _37_

unfair competition. Defendants have engaged in an unlawful, unfair or fraudulent business act and/or practice within the meaning of California Business & Professions Code §17200.

98.     The Defendant Cigna have engaged in an "unlawful" business act and/or practice by engaging in the conduct set forth above. These business acts and practices violated numerous provisions of law, including, the Federal Cares Act, RICO and the FFRCA. Plaintiffs reserve the right to identify additional violations of law as further investigation warrants.

99.     Through the above-described conduct, the Defendant Cigna have engaged in an "unfair" business act or practice in that the justification for such actions and the refusal to notify the general public of the true facts, either in the past or presently, based on the business acts and practices described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and/or offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers.

100.    By engaging in the above-described conduct, Defendants have engaged in a "fraudulent" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive the defendant Cigna's insured and the general public.

101.    The above-described unlawful, unfair or fraudulent business acts and practices engaged in by Defendant Cigna continue to this day and/or present a threat of irreparable harm to the general public. The Defendant Cigna have failed to publicly acknowledge the wrongfulness of their actions and provide the complete relief

required by the statute and pay Plaintiff for the rendered Covid Testing Services as required by law.

102.     Pursuant to California Business & Professions Code §17203, Plaintiff, on behalf of the general public, seek a temporary, preliminary and/or permanent order from this Court prohibiting Defendant Cigna from refusing to continue to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, and or ordering Defendant Cigna and their representatives to stop misleading the public and engage in a corrective campaign, particularly in light of the public misperception created by Defendant and/or its representatives' misstatements and omissions of material fact, as well as provide appropriate equitable monetary relief as the court deems just and appropriate to all persons with a vested interest therein.

103.     Plaintiff, on behalf of the general public, also request the Court issue an order granting the following injunctive and/or declaratory relief:

    a.   That a judicial determination and declaration be made of the rights of the general public, and the corresponding responsibilities of Defendant under both the CARES and FFRCA;

    b.   That Defendant Cigna's representatives be ordered to cease and desist from making misrepresentations to the general public; and

    c.   That Defendant Cigna be required to provide equitable monetary relief to the members of the general public adversely affected by the practices at issue.

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO   34  OF   37

1

**JURY DEMAND**

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

3

requests a trial by jury on all issues so triable.

4

5

**PRAYER FOR RELIEF**

6

**WHEREFORE**, Plaintiff demands judgment in its favor against the Defendant Cigna

7

as follows:

8

A.      Declaring that the Defendant have breached the FFCRA and the CARES Act

9

regarding the coverage and reimbursement of Covid Testing service claims submitted

10

by Plaintiff on behalf of members of the aforementioned health plans, as well as

11

awarding injunctive and declaratory relief to prevent Cigna' continuous actions

12

detailed herein;

13

14

B.      Declaring that the Defendant have breached the FFCRA, the CARES Act,

15

ERISA, and the terms of their health plans regarding the coverage and reimbursement

16

of Covid Testing service claims submitted by Plaintiff on behalf of members of the

17

aforementioned health plans, as well as awarding injunctive and declaratory relief to

18

prevent Cigna's continuous actions detailed herein;

19

20

C.      Declaring that the Defendant failed to provide a "full and fair review"

21

under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedures regulations,

22

and that "deemed exhaustion" under such regulations is effect as a result of Defendant's

23

actions and/or inactions, as well as awarding injunctive, declaratory, and other

24

equitable relief to ensure compliance with ERISA and its claims procedure regulations;

25

26

D.      Treble the damages sustained by Plaintiff as described above under 18

27

U.S.C. § 1962(c);

28

E.      Declaring that Defendant Cigna violated its statutory obligations to process Covid Testing claims in accordance with the Section 6001 of the FFCRA and Section 3202(a) of the CARES Act.

F.      Statutory interest in pursuant to California law

G.      Punitive damages;

H.      Compensatory and consequential damages resulting from the injury to Plaintiff's business in the millions of dollars, as detailed throughout this Original Complaint for the unpaid and underpaid rendered Covid testing Services and to be further established at trial;

I.      Awarding damages as determined based on Defendant Cigna's violation of the California Unfair Business Competition Act;

J.      Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial will show;

K.      Awarding exemplary damages for Defendant Cigna's intentional and tortious conduct in such amounts as the proofs at trial will show;

L.      Declaring that Cigna has violated the FFCRA, the CARES Act, and the terms of the health plans fully-insured by Cigna;

M.      Awarding reasonable attorneys' fees, as provided by common law, Federal or State statute, or equity, including 18 U.S.C. § 1964(c) and 29 U.S.C. § 1132(g);

N       Awarding costs of suit;

O.      Awarding pre-judgment and post-judgment interest as provided by common law, Federal or State statute or rule, or equity; and

P.      Awarding all other relief to which Plaintiff is entitled

Q.      For attorneys' fees pursuant to, inter alia, the private Attorney General

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO   36  OF   37

doctrine and/or C.C.P. §1021.5 as may be appropriate.

Respectfully submitted,

_/s/_  Michael Lynn Gabriel

**LAW OFFICE OF MICHAEL LYNN GABRIEL**
**MICHAEL LYNN GABRIEL CA Bar 86924**
**5763 Stevenson Blvd**
**Newark, CA 94560**
**650-888-9189**
**510-656-5700**
**aetal@earthlink.net**
**migabriel@saloojasinc.com**

**Attorney for Plaintiff. Saloojas, inc**

TITLE OF DOCUMENT:  CLASS ACTION COMPLAINT
PAGE NO  37  OF  _37_