IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOOJAS, INC., <br><br>      Plaintiff, <br><br>   v. <br><br> CIGNA HEALTHCARE OF CALIFORNIA, INC., <br><br>      Defendant. | Case No. 22-cv-03270-CRB <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Saloojas, Inc. ("Saloojas") alleges that Defendant Cigna Healthcare of California, Inc. ("Cigna") violated the Families First Coronavirus Response Act ("the FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), as well as other federal and state laws, by failing to reimburse Saloojas for COVID-19 testing services Saloojas provided to its patients. See, e.g., Compl. (dkt. 23) ¶ 2. Cigna moves to dismiss. See Mot. (dkt. 22). As explained below, the Court finds this matter suitable for resolution without oral argument, pursuant to Local Civil Rule 7-1(b), VACATES the hearing currently set for October 7, 2022, and GRANTS Cigna's motion to dismiss.

I. **BACKGROUND**

Saloojas is a provider of COVID-19 diagnostic testing services. Compl. ¶ 10. It brings this putative class action against Cigna, claiming that Cigna has failed to properly reimburse Saloojas for tests it provided to its patients. Id. ¶ 2. As an out-of-network provider, Saloojas argues that the CARES Act entitles it to full reimbursement of the

1  COVID-19 testing services it billed to Cigna, "without the imposition of cost-sharing, prior
2  authorization or other medical management requirements," and that Cigna "intentionally
3  disregarded its obligations to comply with [those] requirements." Id. ¶¶ 12, 14 (emphasis
4  omitted). Saloojas further alleges that Cigna's "complex processes and procedures . . .
5  force Plaintiff into a paperwork war of attrition," turning "Cigna's internal administrative
6  procedures into a kangaroo court." Id. ¶ 15. While Saloojas alleges that Cigna has "in the
7  past" at least "paid a portion of the full posted Covid testing prices of the Plaintiff," at
8  some point in time Cigna "ceased paying for the full Covid posted prices." Id. ¶¶ 45–46.[1]
9  Saloojas alleges that Cigna's recent practice of requesting voluminous medical records
10 from Saloojas and denying claims for reimbursement (which Saloojas calls the "Improper
11 Record Request Scheme") unlawfully shifts the duty to pay for COVID-19 testing from the
12 insurer to the patient. Id. ¶ 50.

13   Saloojas brings six claims: (1) A violation of Section 6001 of the FFCRA and
14 Section 3202 of the CARES Act; (2) a violation of Section 502(a)(1)(B) of ERISA; (3) a
15 violation of 18 U.S.C. § 1962(c) (RICO); (4) promissory estoppel; (5) injunctive relief; and
16 (6) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
17 § 17200.

18 **II.   LEGAL STANDARD**
19   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be
20 dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P.
21 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory"
22 or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937
23 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual
24 allegations depends on whether it pleads enough facts to "state a claim to relief that is

---

[1] In its opposition to Cigna's motion to dismiss, Saloojas claims that Cigna and other insurers fully paid the posted prices of out-of-network providers during the Trump Administration, but refused to pay during the Biden Administration, because they did not expect the new administration to enforce this provision of the CARES Act against insurers. Opp'n (dkt. 27) at 7–8. This allegation does not appear in Saloojas's complaint.

2

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296–97 (9th Cir. 1990).

**III. DISCUSSION**

    **A.    Violation of the FFCRA and the CARES Act**

Section 6001 of the FFCRA provides:

> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services . . . :

3

    (1) In vitro diagnostic products . . . for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 . . . .

    (2) Items and services furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro diagnostic product described in paragraph (1), but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product.

(b) ENFORCEMENT.—The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in the provisions of . . . part 7 of the Employee Retirement Income Security Act of 1974 . . . .

(c) IMPLEMENTATION.—The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise.

(d) TERMS.—The terms "group health plan"; "health insurance issuer"; "group health insurance coverage", and "individual health insurance coverage" have the meanings given such terms in . . . section 733 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1191b) . . . .

Families First Coronavirus Response Act, Pub. L. 116-127, § 6001, 134 Stat. 178, 201 (2020). Section 3202 of the CARES Act provides:

  (a) REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:

4

. . .

>  (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.
>
> (b) REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID–19.—
>
>  (1) IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider.
>
>  (2) CIVIL MONETARY PENALTIES.—The Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID–19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing.

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, § 3202, 134 Stat. 281, 367 (2020).

In its motion to dismiss, Cigna argues that Section 3202 of the CARES Act confers no private cause of action on providers, and this claim should thus be dismissed as a matter of law. In line with Judge Corley and Judge Chesney's recent conclusions on the same issue,[2] the Court agrees, and dismisses this claim.

---

[2] Saloojas has filed many similar complaints against different insurers in this district. Saloojas, Inc. v. Aetna Health of California, Inc., 22-cv-1696, 22-cv-1702, 22-cv-1703, 22-cv-1704, 22-cv-1706, 2022 WL 2267786 (N.D. Cal. June 23, 2022) [hereinafter Aetna I], granted motions to dismiss in five cases originally filed in small claims court and removed to the Northern District, all filed by the same plaintiff in this case against Aetna. Judge Corley's dismissal in those cases has been appealed to the Ninth Circuit. Judge Corley also recently granted a motion to dismiss an

First, Saloojas has not argued, and no court has found, an express right of action for COVID-19 testing providers in Section 3202 of the CARES Act. Cf. Aetna I, 2022 WL 2267786, at *3. Therefore, the issue is whether the CARES Act provides an implied private cause of action for providers like Saloojas to enforce Section 3202.

Under Alexander v. Sandoval, which governs this inquiry, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." 532 U.S. 275, 286 (2001). The factors laid out in Cort v. Ash, 422 U.S. 66 (1975), also guide the analysis:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (internal quotation marks and citations omitted). However, because Alexander held that "statutory intent is . . . determinative," 532 U.S. at 286, the Ninth Circuit has recently stated that while the first, third, and fourth Cort factors "remain relevant," the focus now must be, as it was in Alexander, on the second factor: whether Congress intended to create a private remedy. McGreevey v. PHH Mortgage Corp., 897 F.3d 1037, 1043–44 (9th Cir. 2018). Following McGreevey and Alexander, a court must begin by examining the text and structure of the statute. Alexander, 532 U.S. at 288; McGreevey, 897 F.3d at 1044.

### 1. The Text and Structure of the CARES Act and the FFCRA

The text and structure of the CARES Act and the FFCRA do not indicate that

---

additional complaint filed by Saloojas against Aetna that alleges the same claims as the complaint in this action. Saloojas, Inc. v. Aetna Health of California, Inc., 22-cv-2887, dkt. 36 (N.D. Cal. Sept. 30, 2022) [hereinafter Aetna II]. And on Monday, Judge Chesney granted a motion to dismiss another complaint by Saloojas, this time against Blue Shield, also alleging the same claims as the complaint in this action. Saloojas, Inc. v. Blue Shield of Cal. Life & Health Ins. Co., 22-cv-3267, dkt. 27 (N.D. Cal. Oct. 3, 2022) [hereinafter Blue Shield].

1   Congress intended to create a private cause of action for providers like Saloojas.

2   Section 3202 lays out how a provider shall be reimbursed: For providers without negotiated rates with insurers (like Saloojas), Section 3202(a)(2) provides that the "issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website." § 3202(a)(2), 134 Stat. at 367. Section 3202(b) requires that cash prices for COVID tests be made public on the provider's website, and that the Secretary of Health and Human Services may impose a civil monetary penalty on a provider that fails to comply. Id. § 3202(b). While the section does indicate an intent to create a right to a reimbursement for testing services (provided that cash prices are listed), it does not indicate an intent to create a private enforcement remedy—in fact, the only enforcement remedy provided is for the HHS Secretary to fine providers for failure to list cash prices, not insurers for failing to pay those cash prices. Id.

Section 6001 of the FFCRA fares no better. Section 6001(a) establishes the coverage that insurers shall provide during the COVID-19 emergency, Section 6001(b) provides for enforcement by the Secretaries of Health and Human Services, Labor, and the Treasury, and Section 6001(c) allows those same Secretaries to "implement the provisions of this section through sub-regulatory guidance, program instruction, or otherwise." § 6001, 134 Stat. at 202. There is no indication of an intent to allow a private cause of action for providers themselves. Id. § 6001(b)–(c). Alexander instructs that an intent to create a different remedy to enforce a right does not indicate an intent to also create a private remedy; "if anything, [it] suggest[s] the opposite." 532 U.S. at 289.

Because nothing in the text and structure of Section 3202 of the CARES Act or Section 6001 of the FFCRA reveals an intent to create a private cause of action, Alexander indicated that that should be the end of the inquiry. Id. at 291. However, because McGreevey states that the Cort factors "remain relevant," it is useful to also apply them. 897 F.3d at 1043.

### 2.   The Cort Factors

First, a court must ask whether the plaintiff is "one of the class for whose especial

7

benefit the statute was enacted," or, in other words, if the "statute create[s] a federal right in favor of the plaintiff." Cort, 422 U.S. at 78 (internal quotation marks omitted). Section 3202(a)(2) does indeed create a right in favor of out-of-network providers—the right to reimbursement by health insurers for COVID-19 testing at prices posted on a public website. § 3202(a)(2), 134 Stat. at 367; Aetna I, 2022 WL 2267786, at *5.

Second, a court must ask whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." Cort, 422 U.S. at 78. As discussed above, there is no indication in the statutory sections at issue that Congress intended to create a private remedy for providers to enforce these provisions, and some indication (at least with respect to Section 6001 of the FFCRA) that Congress did not intend to afford such a remedy. Because Alexander indicated that this factor carries the most weight, and is in fact "determinative," the fact that other factors may come out in favor of implying a private cause of action does not mean that such a right should be implied. See 532 U.S. at 286; see also Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979) ("But [in Cort v. Ash] the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.").

Third, a court must ask whether implying a private cause of action is consistent with the underlying purposes of the legislative scheme. Cort, 422 U.S. at 78. These sections of the CARES Act and the FFCRA were intended to improve access to COVID-19 testing and incentivize providers to continue to offer such services during the ongoing pandemic. See Part II, 134 Stat. at 366 (titled "Access to Health Care for COVID-19 Patients"); id. Subpart A (titled "Coverage of Testing and Preventive Services"); see also Aetna I, 2022 WL 2267786, at *5. A private cause of action would therefore be consistent with the purposes of these sections.

And fourth, a court must ask whether the plaintiff seeks a cause of action traditionally relegated to state law, in an area of special concern to states, or otherwise inappropriate to infer a cause of action based in federal law. Cort, 422 U.S. at 78. A cause

8

of action for diagnostic testing during a global pandemic is not a cause of action traditionally relegated to state law. See Aetna I, 2022 WL 2267786, at *5.

Despite the fact that the other Cort factors point toward recognizing an implied cause of action, because Congress has given no indication that it intended to confer a private cause of action on providers like Saloojas, which is the Supreme Court's primary concern in Alexander, the Court finds that no private cause of action was created, and this claim should be dismissed.[3]

The vast majority of district courts have agreed. See Blue Shield, slip op. at 1–2 (collecting cases). One district court in Texas held otherwise in Diagnostic Affiliates of Ne. Hous., LLC v. United Healthcare Servs., Inc., 21-cv-131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022), but as Judge Corley reasons in Aetna I, Diagnostic Affiliates does not square with Alexander. Aetna I, 2022 WL 2267786, at *5. Diagnostic Affiliates found that a private cause of action was implied in part because the administrative enforcement scheme in Section 3202 "cannot be said to evince an intent to deny a private right of action." Diagnostic Affiliates, 2022 WL 214101, at *8. The court in Diagnostic Affiliates seemed further troubled because "clear rights to reimbursement were created and no other enforcement mechanism exists," and thus "[a]n implied private right of action is a more appropriate construction of the statute that the creation of a right without any remedy." Id. But Alexander instructs courts to "determine whether [a statute] displays an intent to create not just a private right but also a private remedy." 532 U.S. at 286. "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." 532 U.S. at 286–87.

Because amendment to this claim would be futile, see Leadsinger, 512 F.3d at 532, it is dismissed without leave to amend.[4]

---

[3] Saloojas's counterargument—that the pandemic has gotten worse since Judge Corley granted the motion to dismiss in the first Aetna case in June—does not alter this conclusion. Even taking Saloojas's argument—that the COVID-19 pandemic is worse in Summer 2022 than it was in March 2020—as true, neither Alexander nor the Cort factors instruct courts to alter their conclusions based on changed circumstances.

[4] Cigna raises additional arguments on the merits of this claim. Cigna argues that Saloojas did not

9

### B.     Section 502(a)(1)(B) of ERISA

As in Aetna II and Blue Shield, Saloojas cannot claim a violation of Section 502(a)(1)(B) of ERISA because it has not alleged a valid assignment, and, to the extent that Saloojas argues that the FFCRA and CARES Act repealed the requirement to plead an assignment, that is nowhere to be found in the text of those acts.

Section 502(a)(1)(B) of ERISA creates a private cause of action for a participant or a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Saloojas, as a provider, does not have statutory standing to bring a Section 502(a)(1)(B) claim on its own behalf, but must allege a valid assignment of its patients' own rights to bring such claims. See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1289 (9th Cir. 2014); DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc., 852 F.3d 868, 874 (9th Cir. 2017).

Saloojas's allegations in the complaint do not properly plead such an assignment. Saloojas only pleads that "[m]any of the members of plans either insured or administered by Cigna who received Covid Testing services from Plaintiff executed assignment of benefits documents," without stating what benefits they specifically assigned, and without providing the language of the assignment itself. Compl. ¶ 65.[5] Because the patient must

---

allege in its complaint either that (1) it posted cash prices, as required by Section 3202(b) of the CARES Act; or (2) that it had a CLIA certificate, as required under the regulations promulgated under the CARES Act. Additional Policy and Regulatory Revisions in Response to the COVID-19 Public Health Emergency, 85 Fed. Reg. 71,142, 71,152 (Nov. 6, 2020). Because the Court dismisses this claim on other grounds, it declines to address these additional arguments.

[5] Saloojas attempts to cure this deficiency by attaching a document to its opposition that it claims provides the language of the assignment. Opp'n at 9; id. Ex. 4. On a motion to dismiss, a court may consider allegations made in the complaint, documents incorporated into the complaint by reference, or matters of which a court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Saloojas has not argued why this document, nor any other document it appended to its opposition, falls into one of these three categories. See County of Monterey v. Blue Cross of Cal., 17-cv-4260, 2019 WL 343419, at *6 (N.D. Cal. Jan. 28, 2019) (dismissing ERISA claim where a provider attempted to provide assignment language in its opposition to a motion to dismiss, and where the plaintiff did not request that the court take judicial notice of that language). As a result, the Court declines to address Cigna's argument that this document does not constitute a valid assignment of Saloojas's patients' ERISA claims. Reply at 6–7.

assign their right to bring the claims that Saloojas now seeks to bring, see Spinedex, 770 F.3d at 1292; DB Healthcare, 852 F.3d at 876–77, any mere allegation that an assignment was executed fails to meet 12(b)(6) pleading standards. See County of Monterey, 2019 WL 343419, at *1 (holding that an allegation that a patient "signed an Assignment of Benefits form agreeing to, inter alia, assign his or her health insurance benefits to [the provider]" was insufficient to plead an assignment); see also Aetna II, slip op. at 5; Blue Shield, slip op. at 2–3.

To the extent that Saloojas argues that the FFCRA and CARES Act gave providers standing to pursue claims under ERISA without securing an assignment, see Compl. ¶ 66, that argument too should fail, as it did in Aetna II. Aetna II, slip op. at 5–6. Saloojas provides no reasoning or caselaw for the argument the FFCRA and the CARES Act have altered ERISA's standing requirements, and the text and structure of the statutes provide no more clues. Section 6001(b) of the FFCRA instructs: "The provisions of subsection (a) [the requirement for insurers to cover COVID-19 testing] shall be applied . . . as if included in . . . part 7 of [ERISA]." § 6001(b), 134 Stat. at 202. Section 6001(d) incorporates meanings of the terms "group health plan"; "health insurance issuer"; and "group health insurance coverage" as found in section 733 of ERISA. Id. § 6001(d). These inclusions indicate that the FFCRA was supposed to be implemented in concert with ERISA's definitions and plan requirements but provide no indication that they were meant to alter ERISA's standing requirements. Aetna II, slip op. at 5–6; cf. Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co., 20-cv-10345, 2022 WL 1567797 (D.N.J. May 18, 2022) ("Put differently, while the Families First Act did not in so many words amend ERISA, its cross-reference and incorporation of definitions suggest that it is intended to work in tandem with ERISA."). Section 3202 of the CARES Act only implicates ERISA such that it describes the duties of a "group health plan" or "health insurance issuer"—terms defined in ERISA—to reimburse providers for COVID-19 testing. § 3202(a), 134 Stat. at 367.

As a result, Saloojas's claim under ERISA § 502(a)(1)(B) is dismissed with leave to

1    amend, so Saloojas may file a complaint alleging facts sufficient to find that Saloojas's

2    patients assigned their healthcare benefits under Section 502(a)(1)(B) to Saloojas.[6]

3    **C.    RICO**

4    While Cigna argues many grounds upon which to grant their motion to dismiss on

5    the RICO claim, because the complaint clearly fails to plead predicate acts with 9(b)

6    particularity, as in Aetna II and Blue Shield, the Court dismisses this claim on that ground

7    alone.

8    The RICO Act provides that: "It shall be unlawful for any person employed by or

9    associated with any enterprise engaged in, or the activities of which affect, interstate or

10   foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

11   enterprise's affairs through a pattern of racketeering activity or collection of unlawful

12   debt." 18 U.S.C. § 1962(c). To plead this claim, "a plaintiff must allege (1) conduct (2) of

13   an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

14   (5) causing injury to the plaintiff's business or property." Abcarian v. Levine, 972 F.3d

15   1019, 1028 (9th Cir. 2020) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir.

16   1996)). Racketeering activity—which includes embezzlement, mail fraud, and wire fraud,

17   the predicate acts alleged by Saloojas—is "any act indictable under several provisions of

18   Title 18 of the United States Code," codified at 18 U.S.C. § 1961(1). Turner v. Cook, 362

19   F.3d 1219, 1229 (9th Cir. 2004).

20   "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the

21   circumstances constituting fraud or mistake shall be stated with particularity' applies to

22   civil RICO fraud claims." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065–66 (9th Cir.

23   2004) (quoting Fed. R. Civ. P. 9(b)). To survive dismissal under Rule 9(b), a complaint

---

[6] Both parties make additional arguments in their briefing. Cigna argues that Saloojas's claim should fail because it does not allege the terms of the specific ERISA plans under which it sues. Mot. at 7–8. Because the claim fails on the assignment prong alone, the Court declines to address this additional argument. Saloojas argues in its opposition that it has exhausted its administrative remedies under ERISA, even though Cigna does not make an exhaustion argument in its motion to dismiss. Opp'n at 9–10; Reply at 3. The Court declines to address arguments that Cigna did not raise.

1    must "state the time, place, and specific content of the false representations as well as the
2    identities of the parties to the misrepresentation." Id. (internal quotation marks omitted).
3         Saloojas's allegations of mail fraud and wire fraud fall far short of this requirement.
4    Saloojas alleges only that Cigna engaged in "multiple, repeated, continuous use of the
5    mails and wires in furtherance of the Improper Records Request Scheme," but fails to
6    explain the specific fraudulent conduct Cigna engaged in. Compl. ¶ 80. Allegations that
7    Cigna "misadjudicated" claims or "denied the vast majority of Covid Testing claims that
8    Plaintiff has submitted," even taken as true, do not allege fraudulent conduct. Id. ¶ 6. And
9    while Saloojas attaches four claim adjudication documents to its complaint, Compl. at 20–
10   23,[7] it fails to explain which statements in the documents are alleged to be false or why
11   Cigna's records requests were improper, rendering its allegations that Cigna set up a
12   "kangaroo court" to engage in a "paperwork war of attrition" fatally conclusory. Id. ¶ 15;
13   see also Aetna II, slip op. at 7; Blue Shield, slip op. at 3. Saloojas's allegations of
14   embezzlement similarly fail because Saloojas has not plausibly alleged that Cigna
15   misappropriated plan funds for its own benefit; Saloojas merely seems to disagree with
16   Cigna's claim adjudication process and its conclusions. See In re WellPoint, Inc. Out-of-
17   Network UCR Rates Litig., 903 F. Supp. 2d 880, 917 (C.D. Cal. 2012); Compl. ¶ 80–81.
18   Such bare allegations cannot survive a motion to dismiss.
19        Because it is not clear that amendment would be futile, Saloojas's RICO claim is
20   dismissed with leave to amend.

**D.    Promissory Estoppel**

22        Because Saloojas has failed to allege an unambiguous promise by Cigna, this claim
23   is dismissed with leave to amend.
24        In California, the elements of promissory estoppel are: "(1) a promise clear and
25   unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the
26   reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel

---

[7] Saloojas attaches an additional claim adjudication document to its opposition, Opp'n Ex. 2, which the Court cannot consider, see supra note 5.

United States District Court
Northern District of California

must be injured by his reliance." Advanced Choices, Inc. v. State Dep't of Health Servs., 107 Cal. Rptr. 3d 470, 479 (Cal. Ct. App. 2010) (internal quotation marks omitted).

        To describe the "promise" Cigna made that it relied upon, Saloojas alleges only that "Cigna undertook conduct that conveyed to Plaintiff that coverage for COVID testing would be afforded to its members, but then arbitrarily adjudicated claims and refused to issue proper reimbursements when the claims were submitted on behalf of the members of health plans insured or administered by Cigna." Compl. ¶ 84. In its opposition, Saloojas further alleges that Cigna's prior conduct implied that that conduct would continue: "Cigna through its actions of fully paying for the rendered Covid services prior to 2021 created a situation where Saloojas believed through Cigna's conduct that it would continue to pay for the rendered services as required by law." Opp'n at 16–17. In the alternative, Saloojas argues that the requirements of the CARES Act itself implied a promise by Cigna to reimburse Saloojas. Id. at 17.

        Neither of these arguments suffice to establish the "clear and unambiguous" promise required by California law. Avanguard Surgery Ctr., LLC v. Cigna Healthcare of Cal., 20-cv-3405, 2020 WL 5095996 (C.D. Cal. Aug. 28, 2020) ("Plaintiff has alleged no actionable promise, as the Complaint relies exclusively on vague representations and does not identify a promise that Cigna would reimburse Plaintiff for the amounts Plaintiff seeks."); TML Recovery, LLC v. Humana Inc., 18-cv-462, 2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) (dismissing a claim for promissory estoppel in part because "Plaintiffs assert merely that they expected to be paid based on verifications of benefits, trade custom, and prior course of dealing"); Summit Estate, Inc. v. Cigna Healthcare of Cal., 17-cv-3871, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) (dismissing a claim for promissory estoppel where the alleged promise consisted of "merely representations about the terms of certain insurance policies"); see also Aetna II, slip op. at 8–9; Blue Shield, slip op. at 4.

        Therefore, this claim is dismissed with leave to amend so Saloojas may allege any

14

clear and unambiguous promise Cigna has made.[8]

### E. Injunctive Relief

Because injunctive relief is a remedy, not a cause of action, this claim is dismissed with prejudice. Ajetunmobi v. Clarion Mortg. Cap., Inc., 595 F. App'x 680, 684 (9th Cir. 2014); Aetna II, slip op. at 9; Blue Shield, slip op. at 4.

### F. California UCL

Because this claim, like Saloojas's RICO claim, fails to satisfy Federal Rule of Civil Procedure 9(b), it is also dismissed.

The UCL prohibits "unlawful, unfair or fraudulent" business practices as unlawful competition. Cal. Bus. & Prof. Code § 17200. Saloojas's claim invokes each prong of unfair competition in the UCL. Compl. ¶¶ 97–101. Where a complaint "sounds in fraud"—because it alleges a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim"—claims under the UCL are also subject to Federal Rule of Civil Procedure 9(b)'s pleading requirements. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

Saloojas's complaint undoubtedly sounds in fraud. See, e.g., Compl. ¶ 2 (alleging that Cigna "unjustifiably engaged in unconscionable and fraudulent conduct"); id. ¶ 7 (describing "Cigna's fraudulent behavior"); id. ¶ 15(iv) (alleging that "Cigna has set up complex process and procedures . . . to disinform . . . of its obligations to adjudicate Covid Testing claims"); id. ¶ 99 (stating that Cigna engaged in "unfair" business acts or practices in part because of its "refusal to notify the general public of the true facts"); id. ¶ 100 (stating that Cigna engaged in "fraudulent" business acts or practices because its practices "had a tendency and likelihood to deceive defendant Cigna's insured and the general public"). As discussed with respect to Saloojas's RICO claim, Saloojas also fails to plead

---

[8] The Court declines to address either party's additional arguments on this issue, such as Cigna's argument that Saloojas also fails to plead reliance, or Saloojas's argument that its state law claims are not preempted by its ERISA claim, a rebuttal to an argument Cigna did not make.

15

its UCL claims with the required 9(b) particularity. <u>United Food & Com. Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.</u>, 400 F. App'x 255, 257 (9th Cir. 2010) (finding that UCL claims failed to satisfy 9(b) "because it did not explain why [the defendant's] conduct was fraudulent"); <u>Samaan v. Anthem Blue Cross Life & Health Ins. Co.</u>, 20-cv-4332, 2021 WL 2792307, at *8 (C.D. Cal. Mar. 10, 2021) ("Here, Plaintiff appears to allege Defendant's conduct falls under all three prongs but fails to allege any particular facts to support his claim under any prong."). As in <u>Kearns</u>, Saloojas has "failed to articulate the who, what, when, where, and how of the misconduct alleged," and its UCL claims are thus dismissed. 567 F.3d at 1126.

Because it is not entirely clear that amendment would be futile, this dismissal is with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Cigna's motion to dismiss. Claim I (Violation of the FFCRA and the CARES Act) and Claim V (Injunctive Relief) are dismissed without leave to amend. Claim II (Section 502(a)(1)(B) of ERISA), Claim III (RICO), Claim IV (Promissory Estoppel) and Claim VI (California UCL) are dismissed with leave to amend. <u>Leadsinger</u>, 512 F.3d at 532. Saloojas may file an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: October 6, 2022

CHARLES R. BREYER
United States District Judge