1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO , DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

| | | |
|---|---|---|
| **SALOOJAS INC,** | : | **CASE NO: 3:22-CV-03270** |
| **Plaintiff** | : | **AMENDED CLASS ACTION** |
| **vs.** | : | **COMPLAINT** |
| | : | |
| **CIGNA HEALTHCARE OF CALIFORNIA** | : | **Violation of ERISA, Insurance** |
| **INC** | : | **Fraud and Bad Faith, Unfair** |
| | : | **Business Practice and RICO** |
| **Defendant.** | : | |
| | : | |

**AMENDED CLASS ACTION COMPLAINT**

**AND JURY DEMAND**

Plaintiff Saloojas, Inc dba AFC Urgent Care of Newark, A California corporation, ("Plaintiff"), brings this Amended Complaint on its behalf of all others similarly situated, by and through counsel, brings this action against CIGNA HEALTHCARE OF CALIFORNIA, INC. (hereinafter referred to as CIGNA). Plaintiff's allegations herein are based upon personal knowledge and belief as to its own acts and upon the investigation of its counsel and information and belief as to all other matter.

# **INTRODUCTION**

1.     This is a class action lawsuit brought against the Defendant Cigna Healthcare of California, Inc  by Plaintiff on behalf of itself and all and similarly situated individuals.

2.      Plaintiff brings this action against the Defendant Cigna,  hereinafter referred to as Cigna, because it has unjustifiably engaged in unconscionable and fraudulent conduct during the COVID-19 public health emergency period in order to evade and circumvent its obligations to   cover all Cigna Plan members' COVID-19 diagnostic testing ("Covid Testing") services and to reimburse Plaintiff, an out-of-network ("OON") laboratory, for bona fide Covid Testing services offered to these same members in accordance with the set methodology established and supported by the  California Legislature in its SB 510.

3.      The importance of Covid Testing during a worldwide pandemic cannot be overlooked as it is the best mitigation mechanism in place to identify and curtail the spread of the COVID-19 virus. Due to the urgent need to facilitate California's response to the public health emergency posed by COVID-19, Congress passed the FFCRA and the CARES Act to, amongst other things, address issues pertaining to the costs of and access to Covid Testing during the COVID-19 pandemic.

4.      Cigna's conduct (or lack thereof as it pertains to the Employer Plans) has undermined national efforts made to mitigate the spread of the COVID-19 virus as it has caused Plaintiff, and other similarly situated OON providers, to shutter specimen collection and testing locations and to potentially stop offering Covid Testing services altogether. Cigna's misprocessing and denials of Covid Testing claims is nearing an insurmountable financial loss for Plaintiff and has caused Plaintiff to hemorrhage its own funds to cover such financial losses.

5.      Cigna has not only mis-adjudicated almost every single Covid Testing claim submitted by Plaintiff on behalf of members of Cigna Plans and Employer Plans administered by Cigna, but has, in fact, denied the vast majority of Covid Testing claims that Plaintiff has submitted, the reasons for which are to be detailed throughout the course of this Amended Complaint.

6.      Cigna's fraudulent behavior, in its capacity as an insurer and third-party claims administrator, and its failures to oversee and regulate Cigna's behavior (despite being provided with notice and an opportunity to remedy Cigna's behavior) has had a material adverse effect on the nation's response to the COVID-19 pandemic as it has largely diminished access to testing, shifted financial responsibility for the cost of Covid Testing to the members of Cigna Plans and Employer Plans, and, in the event of any future pandemics requiring the cooperation and the joint efforts of licensed medical facilities and professionals (*e.g.* Plaintiff), providers who have fallen victim to Cigna's predatory practices will be hesitant and less likely to participate in any such future Federal and/or State efforts. In turn, jeopardizing future pandemic responses.

7.      Plaintiff has incessantly attempted to contact the Defendant Cigna to inform it of its unlawful practices, has attempted to negotiate an agreed amount/rate to be reimbursed for Covid Testing services with Cigna, and also has provided it notice of its unlawful practices. However, all attempts by Plaintiff to amicably resolve this matter have failed, and Plaintiff is now left with no other option than to file this lawsuit against the Defendant.

8.      By way of this lawsuit, Plaintiff seeks to:

(i)      hold the Defendant Cigna accountable for its fraudulent and unlawful practices, despite being provided with notice of such misconduct;

(ii)     ensure Plaintiff is properly reimbursed for its efforts to provide a public service in response to the COVID-19 public health emergency; and

(iii)    act as a safeguard against future unlawful practices instituted by Blue Shield, Employer Plans, and other insurers and health plans in the event of other national public health emergencies.

## NATURE OF THE CLAIMS

9.     The Plaintiff conducts and renders Covid Diagnostic Testing Services Therefore, Plaintiff as a medical facility and provider has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.

10.     Cigna provides health insurance and/or benefits to members of Cigna Plans pursuant to a variety of health benefit plans and policies of insurance, including employer- sponsored benefit plans and individual health benefit plans.

11.     Under ordinary circumstances, not all health plans insured or administered by Cigna offer its members with access to OON providers and facilities. However, pursuant to SB 510 passed by the California legislature in October 8, 2021 and made retroactive to March 4, 2020 all group health plans and health insurance issuers offering group or individual health insurance coverage are required to provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization <u>or other medical management requirements</u> when such items or services are furnished on or after March 4, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.

12.     Furthermore, SB 510 section 1342 (4) (a) provides that all group health plans and health insurance issuers covering Covid Testing items and services, must

reimburse OON providers as follows:

"(4)(A)  For an out-of-network provider with whom a health care service plan does not have a specifically negotiated rate for COVID-19 diagnostic and screening testing and health care services related to testing, a plan shall reimburse the provider for all testing items or services in an amount that is reasonable, as determined in comparison to prevailing market rates for testing items or services in the geographic region where the item or service is rendered. An out-of-network provider shall accept this payment as payment in full and shall not seek additional remuneration from an enrollee for services related to testing.

13.     Cigna has intentionally disregarded its obligations to comply with its requirements to cover Covid Testing services without the imposition of cost-sharing and other medical management requirements pursuant to SB 510  and, in the instances Plaintiff is reimbursed for its Covid Testing services, has failed to reasonably reimburse Plaintiff in accordance with Section 1342 of SB 510. These violations are made to financially benefit Cigna and, by acting in its own self-interests, has also caused the Employer Plans to be in violation of the  Employee Retirement Income Security Act of 1974 ("ERISA"), and applicable State law.

14.     Cigna has set up complex processes and procedures:

(i)     to deny or underpay claims for arbitrary reasons;

(ii)    to force Plaintiff into a paperwork war of attrition in hopes of wearing down Plaintiff to the point of collapse through continuous inundation of Plaintiff's financial and operational resources

(iii)   that have turned Cigna's internal administrative appeals procedures    into kangaroo court where facts and law have no relevance, thus, rendering the administrative appeals process functionally meritless;

(iv)    to disinform its members, the Employer Plans and other self-funded health plans that it administers, Plaintiff and other similarly situated OON providers,  the general public, and Federal and State regulators of its obligations to adjudicate Covid Testing claims in  accordance with

TITLE OF DOCUMENT:  CLASS ACTION    AMENDED COMPLAINT

1    SB 510; and

2         (v)    to ultimately engage in unscrupulous and fraudulent conduct for its

3                own financial benefit during this public health emergency.

4    15.    Cigna's schemes and misconduct also violate the Racketeer Influenced and

5    Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Cigna has engaged in a

6    pattern of racketeering activity that includes, but may not be limited to, the bad faith

7    insurance fraud under California law as well as unfair business practices acts and the repeated

8    and continuous use of mails and wires in the furtherance of multiple schemes to defraud

9    as detailed through this Amended Complaint.

10                                    **PARTIES**

11    16.    Plaintiff Saloojas, inc dba AFC Urgent Care of Newark is a corporation organized

12    under the laws of the State of California, with its company headquarters located at 1563

13    Stevenson Blvd, Newark, CA 94560   Plaintiff has lawful standing to bring in all claims

14    asserted herein.

15    17.    Defendant Cigna  is a California corporation doing business in this district

16                          **JURISDICTION AND VENUE**

17    18.    This Court has federal question subject matter jurisdiction over this matter

18    pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against Cigna and

19    Employer Plans in Count 1 under  ERISA.

20    19.    This Court also has federal question subject matter jurisdiction over this matter

21    pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against Cigna in Count IV,

22    under RICO.

23    20.    This Court also has supplemental jurisdiction over Plaintiff's state law claims

24    TITLE OF DOCUMENT:  CLASS ACTION    AMENDED COMPLAINT
     PAGE NO   6  OF   38

against Cigna, in Counts II and III because these claims are so related to Plaintiff's federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

21.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action arose in this District.

## CLASS ACTION ALLEGATIONS

22.     This action is brought, and may properly proceed, as a class action, pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a Class defined as follows:

### Nationwide Class:

23.     All persons, businesses and entities who were and are out of network providers of Covid testing services and covered by California's SB 510, as well as CARES and FFRCA ACTs for payment by Cigna for their rendered Covid Testing services to the Defendant Cigna's insured

24.     Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

### Numerosity:

25.     The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, Plaintiff believes, and on that basis allege, that at least tens of thousands of persons exist who are out of network providers to the insured of the Defendant each of

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT

whom could file a similar Complaint to this one filed herein for the  thousands of unpaid and under paid rendered Covid Testing services cases which it has.

### Existence/Predominance of Common Questions of Fact  and Law:

26.    Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These  common legal and factual questions include, but are not limited to:

(a)    Does the ERISA apply to the Defendant Cigna?

(b)    Are the following charges valid COVID Testing fees under ERISA and  SB 510?

    (i)    the doctor Covid medical visit CPT 99203,

    (ii)    the additional urgent care walkin charge CPT CODE S9088,

    (iii)     the patient optional Covid swab collection fee CPT CODE G2023 and

    (iv)    the patient optional fee for the emergency Covid protective equipment CPT CODE 99072.

(c)     can the Defendant Cigna  shift the payment for the above (b)(1-iv) service to their insured as their responsibility?

(d)    if the (b) (1-iv) services are COVID testing services, is it the responsibility of the Defendant Cigna to pay their reasobale prices under SB-510?

27.    Typicality: Plaintiff's claims are typical of the claims of the Class and Class members were injured in the same manner by Defendant's uniform course of conduct alleged herein.  Plaintiff and all Class members have the same claims against defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to the giving rise to the claims of all Class Members.

### Adequacy:

28.     Plaintiff is an adequate representative for the Class because its interests do not conflict with the interests of the Class that it seeks to represent.  Plaintiff has retained counsel competent and highly experienced in complex litigation and they intend to prosecute this action vigorously.  The interests of the  Class will be fairly and adequately protected by Plaintiff and its counsel.

**Superiority**:

29.     A class action is superior to all other available means of fair and   efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified.

30.     Defendant has acted, and refuses to act, on grounds generally applicable to the Class, hereby making appropriate final equitable and injunctive relief with respect to the Class as as  a whole.

31.    In enacting SB 510, the California legislature stated its intent:

**" THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS: SECTION 1.**

The Legislature finds and declares that a significant public health crisis, including the crisis posed by the COVID-19 pandemic that is the subject of the state of emergency declared by the Governor of the State of California on March 4, 2020, necessitates legislation to ensure that individuals are not discouraged from seeking testing or vaccination due to cost sharing or prior authorization requirements. **To ensure that health care service plans and health insurers do not impose cost sharing or prior authorization requirements that might discourage individuals from seeking and receiving testing and vaccinations for a pandemic condition, it is the intent of the Legislature in enacting this act to require coverage for testing costs without cost sharing or prior authorization and to require coverage for prevention recommended by the United States Preventive Services Task Force or the Advisory Committee on Immunization Practices of the federal Centers for Disease Control and Prevention.** In this regard, the Legislature further finds and declares that this exercise of the police power imposes a reasonable condition that is of a character appropriate to the public purpose of ensuring that as many individuals as possible receive necessary testing and vaccination in response to a pandemic"

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.    The California Legislature when the COVID pandemic was just starting wanted to be sure that all Californians had access to COVID Testing Services. The California Legislature passed the SB 510 which is California version of the Federal Cares Act.

33.    Cal. SB 510 sec 1342.2  requires reasonable reimbursement to all out of network providers for their rendered Covid testing services and forbids insurance companies from assessing co-pays and deductibles to their insured for Covid testing services.

"Section 1342.2 is added to the Health and Safety Code, to read

(a) Notwithstanding any other law, a health care service plan contract that covers medical, surgical, and hospital benefits, excluding a specialized health care service plan contract, shall cover the costs for COVID-19 diagnostic and screening testing and health care

services related to diagnostic and screening testing approved or granted emergency use authorization by the federal Food and Drug Administration for COVID-19, regardless of whether the services are provided by an in-network or out-of-network provider. Coverage required by this section shall not be subject to copayment, coinsurance, deductible, or any other form of cost sharing. Services related to COVID-19 diagnostic and screening testing include, but are not limited to, hospital or health care provider office visits for the purposes of receiving testing, products related to testing, the administration of testing, and items and services furnished to an enrollee as part of testing.

### i. Cigna's Arbitrary and Inconsistent Review

34.    Because Plaintiff only provides Covid Testing services  Plaintiff is in the unique position that all claims being electronically submitted to Cigna via the HCFA-1500 forms are uniformly constructed and submitted. Given the uniformity of the Covid Testing services and the electronic claims being submitted to Cigna coupled with the Federal and State mandates that require Cigna to process Covid Testing claims submitted by OON providers in a very singular fashion, Plaintiff's very reasonable expectation was that all Covid Testing claims should be paid at Plaintiff's cash price since Cigna, to date, has not even attempted to negotiate an amount to be paid despite Plaintiff's good faith attempts to do so.

35.    Leaving aside the unlawful and burdensome nature of Cigna's Improper Record Review, Plaintiff also assumed that compliance with Cigna's claim-by-claim record requests would lead to a consistent review and adjudication of Plaintiff's Covid Testing claims since all Covid Testing claims and requested records submitted to Cigna are the same or substantially similar. That is far from the case.

36.    For rendered  Covid service  claims, the Defendant  Cigna in the past has paid a portion of the full posted Covid testing prices of the Plaintiff:

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT

a.   for the doctor COVID medical visit CPT 99203,

b.   the additional urgent care walkin charge CPT CODE S9088,

c.   the patient optional Covid swab collection fee CPT COD G2023 and

d.   the patient optional fee for the emergency COVID protective equipment CPT CODE 99072.

37.   Once  it became obvious to Defendant that there would more than just a few such charges coming in the future the Defendant ceased paying reasonable Covid posted prices for the same Covid testing services and instead shifted the payment responsibility to its insureds even though doing so violated the CARES Act.

**REDUCTIONS FOR CO-PAYS OR DEDUCTIBLES ASSESSED TO THE INSURED IS A SEPARATE VIOLATION OF SB 510**

38.   Below are four (4) samples out of the thousands of Explanation of Benefits provided by the defendant Cigna which states on their face that the payment for the COVID Testing bill submitted by Saloojas has been reduced by co-pays or deductibles assessed against  their insured. That is specially not allowed  under the CARES ACT when the services are for COVID TESTING.

# Provider Explanation of Medical Payment Report

| Provider Number | Provider Name | Date through which claims where processed | B39770089917 | |
|---|---|---|---|---|
| 8238266571 0000002 | SALOOJAS INC | March 26, 2022 | THIS IS NOT A BILL. Retain for your Records | **Cigna.** Page 1 |

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME:
PATIENT'S RELATIONSHIP TO SUBSCRIBER:DEPENDENT
SUBSCRIBER NAME:

PATIENT #:   OPERATION LOCATION/GROUP#: 50205-9-3332286   RECEIVE DATE: 03/08/2022
PROCESS DATE: 03/26
PROVIDER NETWORK STATUS: OUT OF NETWORK
SUBSCRIBER#: U38620037   REF#: 96722067960033

| Item | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Allowed Amount | Adjusted Amount | Not Covered Amount | Deduct/Copay Amount | Coinsurance Amount | Co-pay Amount | DRG/Per Diem/APC Type | DRG/Per Diem/APC Number | DRG/Per Diem Annual Amount | DRG/Per Patient Plan Benefit Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12272021 | 99203 | | 383.00 | 144.66 | | $238.34 | | | | | | 00000 | 0 | 144.66 | A0 |
| 2 | 12272021 | S9088 | | 364.00 | | | $364.00 | | | | | | 00000 | 0 | 0.00 | A1 |
| 3 | 12272021 | G2023 | 99203 | 90.00 | | | $90.00 | | | | | | 00000 | 0 | 0.00 | A2 |
| 4 | 12272021 | 99072 | | 85.00 | | | $85.00 | | | | | | 00000 | 0 | 0.00 | A1 |
| | Total | | | 922.00 | $144.66 | | 777.34 | | | $0.00 | | | 00000 | 0 | 0.00 | A1 |

BALANCE:................ $0.00
PAYMENT OF $144.66 TO PARMJIT M SINGH MD.
PRD SSH

$0.00 HAS BEEN APPLIED TOWARDS THE $2,000 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2021
$255.63 HAS BEEN APPLIED TOWARDS THE $5,000 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2021
$4,718.29 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE (WWW.CIGNAFORHCP.COM)

G2436E 04-08-2015

909520

PAGE 13 OF 38

*Provider Explanation of Medical Payment Report*

**Cigna.**

| Provider Number | Provider Name | Date through which claims where processed | THIS IS NOT A BILL | Page |
|---|---|---|---|---|
| 8238266710000002 | SALOOJAS INC | March 1, 2021 | Retain for your Records | 1 |

B105802045202

PATIENT NAME:
PATIENT'S RELATIONSHIP TO SUBSCRIBER:SUBSCRIBER
SUBSCRIBER NAME:

PATIENT #:                OPERATION LOCATION/GROUP#: 48442-9-3331238 RECEIVE DATE: 02/10/2021
PROCESS DATE: 03/01        REF#: 4672104194382
PROVIDER NETWORK STATUS: OUT OF NETWORK
SUBSCRIBER#:

| | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Amount | Allowed Amount | Not Covered Amount | Deductible Amount | Copay Amount | Coinsurance Amount | Paid Amount | DRG/APC Type | Per Diem Number | DRG/APC Per Diem Amount | DRG/Per Diem Benefit Amount | DRG/Plan Benefit Annual | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12282020 | 99214 | | 385.00 | | $208.79 | | | | | | 00000 | | 0 | 0 | 176.21 | A0 |
| 2 | 12282020 | 99088 | | 364.00 | | $364.00 | | | | | | 00000 | | 0 | 0 | 0.00 | A1 |
| 3 | 12282020 | 99051 | | 168.00 | | $168.00 | | | | | | 00000 | | 0 | 0 | 0.00 | A2 |
| 4 | 12282020 | G2023 | | 90.00 | | $90.00 | | | | | | 00000 | | 0 | 0 | 0.00 | A3 |
| 5 | 12282020 | 99072 | | 85.00 | | $85.00 | | | | | | 00000 | | 0 | 0 | 0.00 | A4 |
| | | Total | | 1092.00 | | $176.21 | $0.00 | | | | | | | | | | |

176.21      915.79

$176.21

A0 622.05 HAS BEEN APPLIED TOWARDS THE $5,000 OUT OF NETWORK INDIVIDUAL DEDUCTIBLE FOR 2020
A1 3622.05 HAS BEEN APPLIED TOWARDS THE $5,000 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2020
A2 3622.05 HAS BEEN APPLIED TOWARDS THE $5,000 IN NETWORK INDIVIDUAL DEDUCTIBLE FOR 2020
A3 622.05 HAS BEEN APPLIED TOWARDS THE $5,000 IN NETWORK FAMILY DEDUCTIBLE FOR 2020
A4 622.05 HAS BEEN APPLIED TOWARDS THE $6,450 OUT OF NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2020
3622.05 HAS BEEN APPLIED TOWARDS THE $6,450 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
3622.05 HAS BEEN APPLIED TOWARDS THE $6,450 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2020
3622.05 HAS BEEN APPLIED TOWARDS THE $6,450 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2020
1,241.21 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

BALANCE...............        $0.00

PAYMENT OF        $176.21 TO PARMJIT M SINGH MD

RRS HB5

reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is
not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount
payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility
requirements, exclusions, limitations, and applicable state mandates.

VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION
ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
(WWW.CIGNAFORHCP.COM)

G2436E 04-08-2015

Proclaim Provider EOP Summary

0186578

**Provider Explanation of Medical Benefits Report**

B26020565402

Cigna.

| Provider Number | Provider Name | Date through which claims where processed | THIS IS NOT A BILL. Retain for your Records |
|---|---|---|---|
| 823826671 0000001 | SALOOJAS INC | September 22, 2021 | Page 1 |

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME:

PATIENT'S RELATIONSHIP TO SUBSCRIBER.DEPENDENT

SUBSCRIBER. NAME:

PATIENT #:                    OPERATION LOCATION/GROUP#:

PROCESS DATE: 09/22

PROVIDER NETWORK STATUS: OUT OF NETWORK

SUBSCRIBER#:

REF#: 768210980J433            RECEIVE DATE: 04/08/2021

| Line | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Procedure Amount | Allowed Amount | Not Covered/Discount Amount | Deduct/Copay Amount | Coinsurance Amount | Per Diem/APC Type | DRG/ Per Diem/ APC# Number | DRG/ Per Diem/ APC# Amount | DRG/ Per Diem/ Benefit Amount | DRG/ Per Diem/ Plan Benefit | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 01082021 | 99214 | | 385.00 | 385.00 | | | | 385.00 | | 00000 | 0 | | 0.00 | A0 |
| 2 | 01082021 | 59088 | | 364.00 | | $364.00 | | | | | 00000 | 0 | 0.00 | | A0 |
| 3 | 01082021 | G2023 | 99214 | 90.00 | | $90.00 | | | | | 00000 | 0 | 0.00 | | A1 |
| 4 | 01082021 | 99072 | | 85.00 | | $85.00 | | | | | 00000 | 0 | 0.00 | | A0 |
| | Total | | | $924.00 | $539.00 | $385.00 | | | | | | | 0.00 | | A0 |

BALANCE.................       $385.00

$385.00 HAS BEEN APPLIED TOWARDS THE $4,000 OUT OF NETWORK INDIVIDUAL DEDUCTIBLE FOR 2021
$3,276.26 HAS BEEN APPLIED TOWARDS THE $8,000 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2021
$385.00 HAS BEEN APPLIED TOWARDS THE $2,000 IN NETWORK INDIVIDUAL DEDUCTIBLE FOR 2021
$3,276.26 HAS BEEN APPLIED TOWARDS THE $4,000 IN NETWORK FAMILY DEDUCTIBLE FOR 2021
$385.00 HAS BEEN APPLIED TOWARDS THE $12,000 OUT OF NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT'
  FOR 2021
$3,344.91 HAS BEEN APPLIED TOWARDS THE $24,000 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR
  2021
$385.00 HAS BEEN APPLIED TOWARDS THE $6,000 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR
  2021
$3,344.91 HAS BEEN APPLIED TOWARDS THE $12,000 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2021
$646.41 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM.

** NOTES ON BENEFIT DETERMINATION:

**** THIS EXPENSE HAS BEEN APPLIED TO PLAN DEDUCTIBLE OR COPAY

THIS IS A CORRECTION OF A PREVIOUSLY PROCESSED CLAIM.

IF YOU HAVE ANY QUESTIONS REGARDING THIS CLAIM, PLEASE INCLUDE THE
REFERENCE NUMBER ON INQUIRIES.

PRD-DIV

PAGE 15 OF 38

# Cigna.

## Provider Explanation of Medical Payment Report

| Provider Number | Provider Name | Date through which claims where processed | | | | |
|---|---|---|---|---|---|---|
| 8238256710000002 | SALOOJAS INC | June 23, 2021 | | THIS IS NOT A BILL | | |

B19092269406

Retain for your Records

Page 1

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME:

PATIENT #:                    OPERATION LOCATION/GROUP#: 55370-9-333448  RECEIVE DATE: 06/04/2021

PATIENT'S RELATIONSHIP TO SUBSCRIBER:DEPENDENT    PROCESS DATE: 06/23
SUBSCRIBER NAME:                                   PROVIDER NETWORK STATUS: OUT OF NETWORK
                                                   SUBSCRIBER#:                      REF#: 967211559172 3

| Line | Procedure Date | Procedure Type | Adjusted Procedure Code | Billed Amount | Adjusted Procedure Code Amount | Allowed Amount | Discount | Not Covered Amount | Deduct/ Copay/ Coinsurance Amount | AHC Type | DRG Per Diem Number | DRG Per Diem Amount | DRG Per Diem Benefit Amount | DRG Per Diem Elig. Benefit Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 05222021 | 99214 | | 385.00 | | $244.22 | | | $0.00 | | 00000 | 0 | | 0 | 140.78 | A0 |
| 2 | 05222021 | 85098 | | 364.00 | | $364.00 | | | | | 00000 | 0 | | 0 | 0.00 | A1 |
| 3 | 05222021 | 99051 | | 168.00 | | $168.00 | | | | | 00000 | 0 | | 0 | 0.00 | A2 |
| 4 | 05222021 | G2023 | | 90.00 | | $90.00 | | | | | 00000 | 0 | | 0 | 0.00 | A3 |
| 5 | 05222021 | 99072 | | 85.00 | | $85.00 | | | | | 00000 | 0 | | 0 | 0.00 | A1 |
| | | Total | | 1092.00 | 140.78 | 951.22 | | | $0.00 | | | | | | |

$0.00 HAS BEEN APPLIED TOWARDS THE $2,800 OUT OF NETWORK INDIVIDUAL DEDUCTIBLE FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $5,200 OUT OF NETWORK FAMILY DEDUCTIBLE FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $2,800 IN NETWORK INDIVIDUAL DEDUCTIBLE FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $5,200 IN NETWORK FAMILY DEDUCTIBLE FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $7,000 OUT OF NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $14,000 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $5,000 IN NETWORK INDIVIDUAL 'OUT-OF-POCKET LIMIT' FOR 2021
$0.00 HAS BEEN APPLIED TOWARDS THE $6,550 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR 2021
$3,119.66 HAS BEEN APPLIED TO THE UNLIMITED ALL MEDICAL BENEFITS INDIVIDUAL LIFETIME MAXIMUM

BALANCE................ $0.00

PAYMENT OF    $140.78 TO PARMJIT M SINGH MD

PRE HH9

REVIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION
ANSWERS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE
(WWW.CIGNAFORHCP.COM)

G2436E 04-08-2015



Proclaim Provider EOP Summary

PAGE 16 OF 38

020873

39.     Under the SB 510 there is no cost sharing permitted for COVID testing between the insured and the insurer. This means that the insured cannot be assessed a co-pay or deductible for the COVID Testing.  There has been instances where the payment to Saloojas contains deductions for the insured's co-pays and deductibles for the COVID Testing. The CARES ACT specifically makes it illegal to reduce the payments for services rendered to COVID Testing for any co-pays on deductibles  assessed to the insured. The insurer is required by law to to pay the full amount without any adjustment for COVID Testing Services.

40.     There is no patient responsibility for the Covid testing bills under the neither SB 510 nor the CARES ACT and it is illegal for Cigna to charge such co-pays and deductibles. The net effect of such illegal co-pays and deductible assessments being to force Cigna's insured into not to getting treatment because of the fear of being charged, or being sued to collect the improper charge or the provider not being paid even though the OON is required to have been reasonably paid under SB 510

41.     Plaintiff is an out of network provider and has provided its rendered  Covid testing services pursuant to and in accordance with both ERISA and SB 510 requirements.

42.     Each insured of Cigna  has executed the  attached  Covid medical form which acts as an assignment giving the Plaintiff the right to submit the claims to Cigna for payment on their behalf for the Covid testing services rendered to them.



**AFC Urgent Care of Newark**
5763 Stevenson Blvd.
Newark, CA  94560

Phone:  510-656-5700
Fax:     510-656-5704
www.AFCUrgentCareNewark.com

**COVID 19 CONSENT**

I understand a consultation with Doctor is necessary to discuss the COVID testing.

I understand Corona Testing is guided by certain restrictions set out by CDPH and Most insurances.

A copy of these guidelines has been provided to me._____(Initial here)

Doctor Consulting Visit Charges are Billed to insurance with copays / coinsurance or charged to me as cash / credit and is a proper charge for Medical Consult service and is not refundable except as Exception below.

The doctor in consultation visit will evaluate my medical condition and help me make the best decision for testing.

I understand that a Covid19 / Corona test is not guaranteed to be done.

After consultation with doctor, an estimated time of turnaround of Covid19 test is offered but is not guaranteed as the big lab may take extra time to do the test due to things beyond this doctor's control.

Exception: If it is determined by the doctor that the Corona test is MEDICALLY NECESSARY then the NO OUT OF POCKET COST rules will apply, which means that per CMS guidelines insurance copays and out of pocket costs will be refunded for patients with insurance and cash pay charges refunded for persons paying cash / credit card,, For Medically necessary Corona testing, Office will bill insurance or CMS for visit and testing by CLIA certified lab.

Signature_____Date_____

Name_____DOB_____

43.    The gist of this case is not new. It is corporate  greed to make profits at any costs in a scheme regardless of the numbers of innocent dead that leaves in its wake.  The best example of that before this case is **_Grimshaw v. Ford Motor Company_** (119 Cal.App.3d 757, 174 Cal.Rptr. 348 . Following the pattern of Grimshaw in its corporate  the desire for profits has left a string of dead across the country.   Just as Ford refused to correct a cheap safety problem on its Pinto car to save money. Cigna has violated both the CARES ACT and California Sb 510  in its scheme to prevent their insureds from getting  the medical care they were entitled. In both cases the results were deaths and the reason to make money because it was felt that the number of payoffs in the suits for damages would be less than the cost to obey the law.

44.    In **_Grimshaw_**, the courts found that, while "the standard of care for engineers in the industry" after a failed safety test was to "redesign and retest," and although fixes were inexpensive, "Ford produced and sold the Pinto to the public without doing anything to remedy the defects."

45.    Ford's conduct was so egregious it was found liable for punitive damages. The court: finding in punitive damages award was upheld on appeal:

> "There was ample evidence to support a finding of malice and Ford's responsibility for malice. Through the results of the crash tests Ford knew that the Pinto's fuel tank and rear structure would expose consumers to serious injury or death in a 20- to 30-mile-per-hour collision. There was evidence that Ford could have corrected the hazardous design defects at minimal cost but decided to defer correction of the shortcomings by engaging in a cost-benefit analysis balancing human lives and limbs against corporate profits. Ford's institutional mentality was shown to be one of callous indifference to public safety. There was substantial evidence that Ford's conduct constituted "conscious disregard" of the probability of injury to members of the consuming public...There is substantial evidence that management was aware of the crash tests showing the vulnerability of the Pinto's fuel tank to rupture at low speed rear impacts with consequent significant risk of injury or death of the occupants by fire. There was testimony from several sources that the test results were forwarded up the chain of command;...While much of the evidence was necessarily circumstantial, there was substantial evidence from which the jury could reasonably find that Ford's management decided to proceed with the production of the Pinto with knowledge of test results revealing design defects which rendered the fuel tank extremely vulnerable on rear impact at low speeds and endangered the safety and lives of the occupants. Such conduct constitutes corporate malice."

46.     Cigna has done virtually the same thing only with its continuous denial of medical coverage  in violation of both the CARES ACT and California's SB 510. Cigna to avoid paying for proper medical care for its insured decided not to follow the law and not to obey the CARES ACT or SB 510. It rejected proper claims for payment in a scheme to force out of network providers from treating their insureds. This is an ongoing scheme of economic extortion. Knowledge of the CARES ACT is shown by the Plaintiff's Appeal letter provided to the court. The appeal letter prevents a good faith defense of mistake because after being giving the appeal letter in Plaintiff's appeals, Cigna continued and still continues not to follow the CARES Act  and  California SB 510 and the harm continues to wit: avoidable Covid deaths,

47.     Cigna's actions are nothing more than a  modern version of  the Ford pinto Case. This is, as it is still ongoing, an intentional act , scheme and program  by Cigna not to enforce the CARES ACT and California SB 510 just to save money by doing so on the pain and in many cases deaths of its insured. The harm that is caused by Cigna is readily foreseeable. Who cannot see the benefit in seeing a doctor for  COVID exam when it s free? In converse, Who cannot see the harm when the insured is prevented from seeing a doctor by illegal copays and deductibles  which force the insured to chose between providing for their families or risking COVID by not seeing a doctor. The exact choice that Congress intend stop citizens having to make.  It is a choice that never should have been put before Cigna's insured because to get to that point Cigna had to  institute a plan, program, scheme to violate  Federal law and not enforce the CARES ACT.

48.     Cigna's liability  for all of the causes of actions stems entirely from its willingness to let people die just to make an extra  buck by curtailing access to the very medical care which was guaranteed by Congress in  the CARES ACT.

49 .    The actions by Cigna meet every definition of coercion , malice  and gross indifference to life. Just as in *Grimshaw,* supra, the judgment should be the same regarding Cigna's scheme of death.

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT

50.     Replacing Ford with  Cigna in the ***Grimshaw*** finding, one has no difficulty seeing its pattern of illegal activity

> "There was ample evidence to support a finding of malice and  ~~Ford's~~  (Cigna's] responsibility for malice. *****There was evidence that  ~~Ford~~ [Cigna) could have ~~corrected the hazardous design defects~~ {followed the CARES ACT} at minimal cost but decided to ~~defer correction of the shortcomings~~ ignore the CARES ACT by engaging in a cost-benefit analysis balancing human lives and limbs against corporate profits. ~~Ford's~~ Cigna's institutional mentality was shown to be one of callous indifference to public safety. There was substantial evidence that ~~Ford's~~ (Cigna's) conduct constituted "conscious disregard" of the probability of injury to members of the consuming public…

## CAUSES OF ACTION

## CLAIM I

# VIOLATION OF SECTION 502(a)(1)(B) OF ERISA

51.     All of the Cigna's Plans at issue are benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA")

52.     Every patient of Saloojas executes the assignment set forth above. Among those are included the patients whose EOBS were included in this Amended complaint.  The language is unambiguous There is no confusion.

> "Doctor Consulting Visa Charges are Billed to the insurance company with copays/coinsurance or charged to me as cash/credit and is a proper charge for medical consult service and is not refundable except as    ***
>
> Exception: if it is determined by the doctor that the Corona test is Medically Necessary then the NO OUT OF POCKET COST rules will apply which means that per CMS Guidelines insurance copays and out of pocket costs will be refunded for patients with insurance and cash pay charges refunded for persons paying cash/ credit card. For medically necessary Corona testing, office will bill insurance or CMS for visit and testing by CLIA certified lab."

53.     This is an assignment giving Saloojas the authorization to present the bill for the rendered Covid services. Saloojas is not been billing the patients AND only bills the Insurance

1

company. the patient knows that it will not get a bill AND is consenting to the assignment

2

**B.   SALOOJAS HAS EXHAUSTED ADMINISTRATIVE REMEDIES**

3

54.    In each of the unpaid and underpaid Covid cases, Cigna had issued an EOB and for

4

most of those unpaid claims they were appealed and Cigna rejected them with either no reason

5

given or reasons that violated both the CARES Act and California's SB 510.

6

55.    In each of the appeals   there was provided a complete record of the case submitted,

7

the Bill, Cigna's Explanation of Benefits and Plaintiff's Appeal letter.  This was the same

8

scenario  repeated in every  appeal conducted before Saloojas gave up and started suing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**AFC Urgent Care of Newark**
5763 Stevenson Blvd Suite A.
Newark, CA  94560
Phone:  510-656-5700
Fax:      510-656-5704
www.AFCUrgentCareNewark.com

TAX ID:          NPI                    SALOOJAS, INC

To

    Saloojas is an out of network provider.  Saloojas has never had any provider agreement with your company. We are requesting payment for the unpaid portions of the COVID Testing Services rendered to your insured.

   There have been several billing errors committed by your company in the past, each of which separately support the payment of the full bill as set forth below:

## I. PAYMENT OF LESS THAN THE FULL POSTED PRICES FOR OUR COVID TESTING SERVICES IS A DIRECT VIOLATION OF THE CARES ACT SEC 3202

    Under the CARES Act  Section  3202, an out of network provider, which would be Saloojas as it never agreed  to be paid less than  its posted price for the COVID services, is to be paid its cash posted prices for its COVID Testing rendered. It is not open to negotiation or adjustment in any way, That is the law as you can read for yourself below:

### "SEC. 3202.   PRICING OF DIAGNOSTIC  TESTING.

  (a)  Reimbursement Rates.--A group health plan or a health insurance issuer providing   coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116-127) with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:

    (1)   If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

(2)  Reimbursement. Public information. **Web  posting**. If the health plan or issuer does not have a negotiated rate with such  provider, such **plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by  the provider on a public internet  website,** or such plan or issuer may negotiate a rate with such provider for less than such cash price."

   TITLE OF DOCUMENT :  AMENDED COMPLAINT
   PAGE 23 OF 38

1

Our posted prices are set forth below and have not changed from the date of posting. The codes are those provided by the American Medical Association for use for describing the services rendered under the Care Act.  Therefore, if there is a question look to the service description in the posted prices , see that it is for a COVID testing and then pay for the service.

Posted on **https://saloojasinc.com/about**

| CARES ACT POSTED PRICES FOR COVID SERVICES | | |
|---|---|---|
| **SERVICE RENDERED** | **BILLING CODE FOR SERVICE** | **CASH PRICE OF SERVICE** |
| • **New Patient, Doctor Visit** | **CODE 99203** | **$383  SINCE January 2, 2019** |
| • **Established Patient, Doctor visit Code** | **CODE 99214** | **$385 SINCE January 2, 2019** |
| • **Services at URGENT CARE Center POS 20** | **CODE S9088** | **$364 SINCE January 2, 2019** |
| • **Procedure of Collection of Covid Nose swab** | **CODE G2023** | **$90 SINCE May 20, 2020** |
| • **Covid Protective equipment PPE,** | **CODE  99072** | **$85 SINCE May 20, 2020** |

We have set forth  the amount paid and the amount still owed under the CARES ACT.

## II. REDUCTIONS FOR CO-PAYS OR DEDUCTIBLES ASSESSED TO THE INSURED IS A SEPARATE VIOLATION OF THE CARES ACT SECTION 3202

Additionally, in many instances, the payment for the COVID Testing bill submitted by Saloojas has been reduced by co-pays or deductibles assessed against  the insured. That is specially not allowed  under the CARES ACT when the services are for COVID TESTING.

Under the CARES Act Sec 3203, there is no cost sharing permitted for COVID testing between the insured and the insurer. This means that the insured cannot be assessed a co-pay or deductible for the COVID Testing.  There has been instances where the payment to Saloojas contains deductions for the insured's co-pays and deductibles for the COVID Testing. The CARES ACT specifically makes it illegal to reduce the payments for services rendered to COVID Testing for any co-pays on deductibles  assessed to the insured. The insurer is required by law to to pay the full amount without any adjustment for COVID Testing services.

## SEC. 3203. RAPID COVERAGE OF PREVENTIVE SERVICES AND VACCINES FOR CORONAVIRUS.

**(a)   IN GENERAL.**—Notwithstanding 2713(b) of the Public Health Service Act (42 U.S.C. 300gg–13), the Secretary of Health and Human Services, the **Secretary of Labor, and the Secretary of the Treasury shall require group health plans and health insurance issuers**

TITLE OF DOCUMENT :  AMENDED COMPLAINT
PAGE 24 OF 38

**offering group or individual health insurance to cover** *(without cost-sharing)* **any qualifying coronavirus preventive service, pursuant to section 2713(a) of the Public Health Service Act** (42 U.S.C. 300gg–13(a)) (including the regulations under sections 2590.715–2713 of title 29, Code of Federal Regulations, section 54.9815–2713 of title 26, Code of Federal Regulations, and section 147.130 of title 45, Code of Federal Regulations (or any successor regulations)). The requirement described in this subsection shall take effect with respect to a qualifying coronavirus preventive service on the specified date described in subsection (b)(2).

The CARES ACT was implemented so as to apply only to COVID Testing services. That may be where the problem occurred at your end. While it would be totally proper to reduce by co-pays and deductibles for non COVID Testing and treatment the amount that should be paid by the insured from a bill to an out of network provider, for COVID TESTING along such reductions are not allowed. All such reductions assessed against the COVID Testing bills submitted by Saloojas are simply wrong, illegal and must be corrected.

Your company is simply not allowed to assess co-pays or deductibles against the insured so as to reduce the payment to us for the COVID Testing services which we rendered.

**CONCLUSION**

We stand on the law, to wit the CARES ACT and deny the request for a refund which would require us to take less than that for which we are entitled under the law. Furthermore, by this letter requesting an appeal of the original denial to pay the remainder of the full bill which not was not originally paid.

If we do receive payment in full, then we will file a small claims action for the payment of the remainder of the bill as a violation of the CARES ACT.

Respectfully

Michael Lynn Gabriel
General Counsel

TITLE OF DOCUMENT : AMENDED COMPLAINT
PAGE 25 OF 38

56.     After consistent rejections, Plaintiff realized it was begin played by Cigna who had no intention to properly process the appeals.

57.     ERISA requires the Employer Plans and Cigna to reimburse OON providers for Covid Testing Services in a specific manner which was not followed. The appeal process was a sham.

58.     Cigna's denials and mis-adjudication of Covid Testing claims submitted by Plaintiff on behalf of members of self-funded health plans administered by Cigna (*e.g.* Employer Plans) are a violation of the requirements of self-funded ERISA health plans to cover Covid Testing services and a wrongful denial of benefits owed under ERISA.

59.     Pursuant to 29 C.F.R. § 2560.503-1(l) and 45 C.F.R. §§ 147.136(b)(2)(ii (F)(1), (b)(3)(ii)(F)(1), Cigna' internal claims and appeals processes (*i.e.* claims procedures) failed to comply with or strictly adhere to the minimum requirements of the internal claims and appeals processes, as prescribed by 29 C.F.R. § 2560.503-1 and/or 45 C.F.R. § 147.136; therefore, the internal claims and appeals processes available under each Cigna Plan and Employer Plan are deemed to have been exhausted allowing Plaintiff to pursue any available remedies under Section 502(a) of ERISA, or under State law on the basis that Cigna have failed to provide a reasonable claims procedure that would yield a decision on the merits of the Covid Testing claims at issue.

60.     Plaintiff has exhausted available administrative remedies, or exhaustion of administrative remedies would be futile given the above, and, alternatively, Cigna's utter disregard for ERISA deadlines and procedures described above excuses any failure to exhaust administrative remedies.

61.     Under 29 U.S.C. § 1132 a member of a self-funded health plan subject to ERISA and Plaintiff under the circumstances set forth above may bring a civil action to recover

benefits due under the plan, to enforce rights under the plan and to clarify rights and future benefits under the plan.

62.     Cigna' failures to properly pay Plaintiff  for covered Covid Testing services rendered to the members constitutes a breach of these self-funded health plans, and Cigna' failures were erroneous, arbitrary and capricious and were without reason, were unsupported by substantial evidence, and were erroneous as a matter of law.

63.     Plaintiff is entitled to payment, pursuant to the ERISA  for the bona fide Covid Testing services provided to Cigna members.

64.     Plaintiff is also entitled to reasonable attorneys' fees, pursuant to 29 U.S.C.  § 1132 (g)(1)

# CLAIM II

# INSURANCE BAD FAITH AND FRAUD

65     Plaintiff hereby incorporate each and every foregoing allegation as if fully alleged herein and further alleges as follows.

66.     Congress in early 2020 when the COVID pandemic was just starting wanted to be sure   that all Americans had access to COVID Testing Services. Congress passed the federal Cares Act Covid testing provisions, which are set forth below:

SEC. 6001. COVERAGE OF TESTING FOR COVID–19.

(a)     IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements, for the following items and services furnished during any portion of the

emergency period beginning on or after the date of the enactment of this Act:

> (1)     In vitro diagnostic products. . . for the detection of SARS–CoV–2or the  diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized and the administration of such in vitro diagnostic products. (emphasis added).

> [d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19 [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under section 223(c)(2)(A) will not fail to be an HDHP merely because the health plan provides medical care services and items purchased related to testing for and treatment of COVID-19 prior to the satisfaction of the applicable minimum deductible.

67.   The CARES Act then states:

> SEC. 3202. PRICING OF DIAGNOSTIC TESTING.

> (a)     REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee **shall reimburse the provider** of the diagnostic testing **as follows**:

> (1)     If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

> (2)     If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer **shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website,** or such plan or issuer may negotiate a rate with such provider for less than such cash price.

> (b)     REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID–19.—

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT
PAGE NO   28  OF   38

(1)     IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider

68.     California passed its own version of the CARES Act in SB 510.  Both Federal and California law forbid insurance companies from assessing co-pays and deductibles to their insured.

69.   The only practical difference between the CARES Act and SB 510 is that under the CARES ACT out of network providers are to be paid by insurance companies  the full posted Covid prices for rendered Covid testing services. Whereas under SBA 510 insurance companies   are to be   paid the reasonable value for their services as determined as follows:

"a plan shall reimburse the provider for all testing items or services in an amount that is reasonable, as determined in comparison to prevailing market rates for testing items or services in the geographic region where the item or service is rendered."

70.     There is a split among Federal District Courts as to whether a private right of action exists to enforce the CARES ACT but no Federal court has declared  that the CARES ACT itself is unconstitutional or that insurance companies do not have to follow it. All of the federal courts that have heard the matter have agreed that at minimum the CARES ACT is enforceable by the Federal Government against insurance companies such as Cigna

71.     Each of the unpaid and underpaid claims submitted by the Plaintiff to the Defendant Cigna were for an insured of the Defendant Cigna. In each case the insured had authorized the claims to be submitted their behalf for the COVID Testing services that had been rendered to the insured

72.     Implied in each of the policies with its insured is a covenant that the Defendant Cigna would act in good faith and deal fairly with each insured. Also implied in each policy is that Cigna would do nothing to interfere with the rights of the insured to receive the benefits of their insurance policies and those benefits mandated by law

73.     The defendant Cigna breached the covenant of good faith and faith dealing and also committed insurance fraud against each insured when it violated both the federal CARES ACT and California's SB 510 by not properly paying out of network providers for their rendered COVID testing services. Under the CARES ACT payment is required to be the full posted prices. Under California SB 510 Cigna was required to pay the out of network provider at the prevailing rates in the market area. The defendant Cigna has intentionally acted to avoid the requirements of both Federal and California law in the amounts paid and did not even tried to meet their requirements to the detriments of its insured.

74.     The Defendant Cigna also breached the covenant of good faith and faith dealing and committed insurance fraud against each insured and is continuing to do when violated both the CARES ACT and California's SB510 is assessing copays and deductibles to their insureds.   As shown forth in the example Cigna EOBS in this Amended complaint the Defendant Cigna is basing its payment om

    i.      on the coverage of the Plan which is illegal because payment is to be

        made irrespective of the terms of the plan and

    ii.      assessing patient responsibility when there is to be none as

        assessments for co-pays and deductible are specially prohibited by

        both federal and California law

75.     The Defendant Cigna's acts and practices as detailed above are intentional actions being both designed and planned to violate both California and federal laws and deprive their insured of benefits mandated not just by the insurance policies but mandated by law as well.

76.   As a result of the actions of the Defendant Cigna in illegally refusing to properly pay for COVID testing services and also assessing its insured with illegal copays and deductibles, Cigna insured have to chose between paying for the doctor visits and COVID care themselves or not getting medical care for which they were supposed to have been guaranteed under both the CARES ACT and SB 510.

77.     The actions of Cigna constitute fraud oppression and malice as defined in California Civil Code section 3264 and in addition to actual damages, exemplary damages should be awarded to make and example of and the punish the defendant

78.   The defendant Cigna should not derive no benefit from its fraudulent and illegal activities and should pay to each of its insured who used an out of network provider for a COVID test the price of

    (i)   the doctor Covid medical visit

    (ii)   the additional urgent care walkin charge

    (iii)    the patient optional Covid swab collection fee  and

    (iv)    the patient optional fee for the emergency Covid protective equipment which Cigna saved when it illegally refused to follow the CARES ACT and SB 510. The monies that Cigna would have been required to pay for the services which had they been rendered should now be paid to its insured

## CLAIM   III

## UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS ACTS

## AND PRACTICES

79.    Plaintiff hereby incorporate each and every foregoing allegation as if fully alleged herein and further alleges as follows.

80.     The defendant Cigna has violated both the federal CARES ACT  and California's SB 510 by not properly paying out of network providers for their rendered COVID testing services . Under the CARES ACT payment is required to be the full posted prices. Under California SB 510 it is required to be a prevailing rates in the market area. The defendant Cigna has not made met the minimum requirements of neither  Federal nor California law in the amounts paid

81.    The Defendant Cigna also has and is continuing to violate both the CARES ACT and California's SB510 is assessing copays and deductibles to their insureds.  As shown forth in the example Cigna EOBS in this Amended complaint the Defendant Cigna is basing its payment

    i.     on the  benefits coverage of the Plan which is illegal because

         payment is to be made irrespective of the terms of the plan and

  2        assessing patient responsibility when there is to be none as

         assessments  for co-pays and deductible are specially  prohibited by

         both federal and California law

82.     The Defendant Cigna's acts and practices as detailed above constitute acts of unfair business practice. Defendant has engaged in an unlawful, unfair or fraudulent

business act and/or practices within the meaning of California Business & Professions Code §17200. The defendant has deliberately not followed or implemented the law of the State of California as set forth in SB 510. Cigna then went even further and intentionally set up a scheme and plan to both avoiding and misrepresent to its insureds the application of SB 510 to their insurance coverage,

83.    The Defendant Cigna have engaged in an "unlawful" business act and/or practice by engaging in the conduct set forth above. These business acts and practices violated numerous provisions of law, including, California's SB 510,  Federal Cares Act and constituted Insurance fraud and bad faith under California law. Plaintiff reserve the right to identify additional violations of law as further investigation warrants.

84.    Through the above-described conduct, the Defendant Cigna have engaged in an "unfair" business act or practice in that the justification for such actions and the refusal to notify the general public of the true facts, either in the past or presently, based on the business acts and practices described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and/or offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers.

56.   By engaging in the above-described conduct, Defendants have engaged in a "fraudulent" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive the defendant Cigna's insured and the general public.

86.    The above-described unlawful, unfair or fraudulent business acts and practices engaged in by Defendant Cigna continue to this day and/or present a threat of irreparable harm to the general public. The Defendant Cigna have failed to publicly acknowledge the

wrongfulness of their actions and provide the complete relief required by the statute and pay Plaintiff for the rendered Covid Testing Services as required by law.

87.    Pursuant to California Business & Professions Code §17203, Plaintiff, on behalf of the general public, seek a temporary, preliminary and/or permanent order from this Court prohibiting Defendant Cigna from refusing to continue to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, and or ordering Defendant Cigna and their representatives to stop misleading the public and engage in a corrective campaign, particularly in light of the public misperception created by Defendant and/or its representatives' misstatements and omissions of material fact, as well as provide appropriate equitable monetary relief as the court deems just and appropriate to all persons with a vested interest therein.

88.    Plaintiff, on behalf of the general public, also request the Court issue an order granting the following injunctive and/or declaratory relief:

a.    That a judicial determination and declaration be made of the rights of the general public, and the corresponding responsibilities of Defendant under SB 510,  the CARES Act and FFRCA;

b.    That Defendant Cigna's representatives be ordered to cease and desist from  making misrepresentations to the general public; and

c.    That Defendant Cigna be required to provide equitable monetary relief to the members of the general public adversely affected by the practices at issue.

d.    That the Defendant Cigna disgorge the profits derived from and  made

from the practices of not  following  the CARES ACT and SB 510


## CLAIM IV
## VIOLATION OF 18 U.S.C. § 1962
## (RICO)

89.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

90.    Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3)

91.    Each of the health plans that Cigna administers is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Employer Plans and self-funded health plans that Cigna administers were engaged in activities affecting interstate and foreign commerce at all times relevant to this Amended Complaint.

92     Cigna is associated with the plans that it administers and has conducted or participated, directly or indirectly, in the conduct of the Employer Plans and self-funded health  plans  that  Cigna  administers  in  relation  to  Plaintiff  through  a  pattern  of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

93.    The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully throughout this Amended Complaint, includes Cigna's multiple, repeated, and continuous use of the mails and wires in furtherance violations of California's SB-510 , its insurance and bad faith activities under California law and its unfair business practices in California  in furtherance of  its disinformation scheme and campaign to illegally assess co-pays deductibles to its insured in violations of both the CARES Act and California SB-510.

Cigna's violations have occurred in relation to, and/or involve benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with this COVID-19 Public Health Emergency which is a presidentially declared "emergency" as this term is defined in Section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

94.    Specific and detailed explanations and examples of Cigna's use of the mails and wires to engage in a pattern of racketeering activity and embezzlement, theft, and conversion of self-funded health plan assets are detailed throughout this  Complaint.

95.    As a direct result of Cigna's violation of 18 U.S.C. § 1962(c), Plaintiff has suffered substantial injury to its business and property within the meaning of 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

***WHEREFORE***, Plaintiff demands judgment in its favor against the Defendant Cigna as follows:

A.    Declaring the Defendant breached the FFCRA and the CARES Act regarding the coverage and reimbursement of Covid Testing service claims submitted by Plaintiff on behalf of members of the aforementioned health plans, as well as awarding injunctive and declaratory relief to prevent Cigna' continuous actions detailed herein;

B.    Declaring that the Defendant Cigna have breached the FFCRA, the CARES Act, ERISA, and the terms of their health plans regarding the coverage and reimbursement of Covid Testing service claims submitted by Plaintiff on behalf of members of the aforementioned health plans, as well as awarding injunctive and declaratory relief to prevent Cigna's  continuous actions detailed herein;

C.    Declaring that the Defendant failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedures regulations, and that

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT

"deemed exhaustion" under such regulations is effect as a result of Defendant's actions and/or inactions, as well as awarding injunctive, declaratory, and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

D.      Treble the damages sustained by Plaintiff as described above under 18 U.S.C. § 1962(c);

E.      Declaring that Defendant Cigna violated its statutory obligations to process Covid Testing claims in accordance with the Section 6001 of the FFCRA and Section 3202(a) of the CARES Act.

F.      Statutory interest in pursuant to California law

G.      Punitive damages;

H.      Compensatory and consequential damages resulting from the injury to Plaintiff's business in excess of $2,000,000 dollars, as detailed throughout this Original Complaint for the unpaid and underpaid rendered Covid testing Services and to be further established at trial;

I.      Awarding damages as determined based on Defendant Cigna's violation of the California Unfair Business Competition Act;

J.      Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial will show;

K.      Awarding exemplary damages for Defendant Cigna's intentional and tortious conduct in such amounts as the proofs at trial will show;

L.      Declaring that Cigna has violated the FFCRA, the CARES Act, and the terms of the health plans fully-insured by Cigna;

M.      Awarding reasonable attorneys' fees, as provided by common law, Federal or State statute, or equity, including 18 U.S.C. § 1964(c) and 29 U.S.C. § 1132(g);

1  N        Awarding costs of suit;

2  O.        Awarding pre-judgment and post-judgment interest as provided

3  by common law, Federal or State statute or rule, or equity; and

4  P.        Awarding all other relief to which Plaintiff is entitled

5  Q.        For attorneys' fees pursuant to, inter alia, the private Attorney General

6  doctrine  and/or C.C.P. §1021.5 as may be appropriate.

7  R,        For such other relief and damages as the Court finds just and proper

8  Dated October 25, 2022                Respectfully submitted,

9

10                                _/s/_  Michael Lynn Gabriel

11                                **LAW OFFICE OF MICHAEL LYNN GABRIEL**
                                   **MICHAEL LYNN GABRIEL CA Bar 86924**
12                                 **5763 Stevenson Blvd**
                                   **Newark, CA 94560**
13                                 **650-888-9189, 510-656-5700**
                                   **aetal@earthlink.net**
14
                                   **Attorney for Plaintiff Saloojas, Inc**
15

16

17

18

19

20

21

22

23

24

25

26

27

28

TITLE OF DOCUMENT:  CLASS ACTION   AMENDED COMPLAINT
                    PAGE NO  38  OF __38__